Kevin J. Fee (KF-8818)
Amy C. Gross (AG-8836)
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
E-mail: kjfee@duanemorris.com
E-mail:acgross@duanemorris.com
Phone: 212-692-1049
Phone: 212-471-1806
Fax: 212-692-1020

Lewis R. Olshin (Pro Hac Vice to be filed)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
E-mail:olshin@duanemorris.com
Phone: 215-979-1129
Fax: 215-689-3622

Attorneys for Plaintiff
ACE American Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY<br><br>Defendant. | Case No.: 16-CV-8773<br><br>**COMPLAINT**<br><br>Judge:<br>Complaint Filed: 11/11/2016 |

DM1\7348363.2 G4024/00001

Plaintiff ACE American Insurance Company (hereinafter "ACE"), files this Complaint against Defendant American Guarantee & Liability Insurance Company (hereinafter "AGLIC") as follows:

## I.   <u>NATURE OF THIS ACTION</u>

1.      This action involves an actual controversy and seeks a declaratory judgment that AGLIC's Excess Policy No. AUC5327456-05 (the "AGLIC Excess Policy") is required to fund the full $5,000,000 limit of liability for a settlement (hereinafter the "Settlement") concluded in the personal injury case brought in the Supreme Court, State of New York, County of Westchester, Index No. 68572/2012 captioned *Richard Wager and Sana Wager v. Pelham Union Free School District et. al*. (the "Civil Action").

2.      At the time of the Settlement of the Civil Action, ACE contended that the full AGLIC Excess Policy limit of $5,000,000 should be tendered and contributed toward the Settlement ("ACE's Position").  Conversely, AGLIC contended that no amount of the AGLIC Excess Policy limit of $5,000,000 should be tendered and contributed toward the Settlement ("AGLIC's Position").  To resolve the dispute for the purpose of achieving a Settlement of the Civil Action, ACE and AGLIC entered into an Interim Funding Agreement pursuant to which AGLIC contributed $1.5 million and ACE funded the $3.5 million balance of the AGLIC Excess Policy limit with each insurer reserving rights to contest the amount each paid in accordance with the terms of the Interim Funding Agreement.[1]  ACE also paid additional funds toward the Settlement of the Civil Action as a result of certain Cross Claims asserted by Pelham Union Free School District ("Pelham") against Wager Contracting, Inc. ("Wager Contracting"), who, as

---

[1] Due to confidentiality provisions in various agreements relating to the underlying action, the Interim Funding Agreement is not attached to this pleading.  ACE plans to produce it to the Court separately pursuant to an appropriate confidentiality order to be submitted to the Court for approval.

explained hereinafter,  was an insured of both AGLIC and ACE.

3.    ACE seeks a declaratory judgment of this actual controversy pursuant to 28 U.S.C. § 2201 *et. seq.* that ACE's Position is meritorious under the facts of this case and that AGLIC is required to pay to ACE its full $5 million Excess Policy limit; i.e., an additional $3.5 million.

## II.    THE PARTIES

4.    ACE is a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

5.    AGLIC is a New York Corporation with its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196-1056.  AGLIC maintains a statutory home office located at 1 Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006.  AGLIC has personal contacts within this district sufficient to subject it to the jurisdiction of this district.

## III.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

7.    The amount in controversy is in excess of $75,000 exclusive of interest and costs.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Pursuant to the Interim Funding Agreement, both parties have agreed to venue in this Court.  Interim Funding Agreement at V.E.

## IV.    FACTUAL BACKGROUND

### A.    The Civil Action

9.    This action stems from the personal injuries suffered by Richard Wager ("Mr. Wager") on October 31, 2009.  At the time of his injuries, Mr. Wager was employed by Wager

2

Contracting.  Mr. Wager suffered severe injuries while he was performing demolition work on a school building owned by Pelham.  Pelham had entered into a written contract with Wager Contracting for the performance of the work.

10.     Wager Contracting's written contract with Pelham obligated Wager Contracting to indemnify Pelham for Wager Contracting's own negligence and further obligated Wager Contracting to purchase $1 million in primary general liability insurance and $5 million in excess insurance insuring Wager Contracting and naming Pelham and the project architect Peter Gisolfi Associates (hereinafter "Gisolfi") as additional insureds on both policies.

11.     Wager Contracting, through its trade group IRF Construction Group, Inc. c/o Preferred Concepts, Inc., complied with its contractual obligations and purchased a $1 million primary general liability policy from NGM Insurance Company (the "NGM Primary Policy") and the $5 million AGLIC Excess Policy insuring Wager Contracting.  Both Pelham and Gisolfi were listed on the Additional Insured Schedule to the NGM Primary Policy.  In addition, the Additional Insured-Designated Person or Organization endorsement to the NGM Primary Policy amended the definition of "WHO IS AN INSURED" "… to include the person or organization shown in the Schedule [referring to the Additional Insured Schedule] as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you."

12.     In a February 9, 2016 letter to Pelham, AGLIC acknowledged that "[b]ecause the AGLIC [Excess] Policy follows form to the NGM [Primary] Policy and Pelham is identified in the Schedule of Additional Insureds, Pelham likewise qualifies as an additional insured under the AGLIC [Excess] Policy for the Wager Action.".

13.     ACE issued a Specific Excess Workers' Compensation and Employers' Liability Insurance Policy No. WCU C45695244 (the "ACE Excess WC/EL Policy") to Special Trades

3

Contracting and Construction Trust, which is a group self-insurance program authorized by the New York Workers' Compensation Law.  The ACE Excess WC/EL Policy was a reimbursement policy and was excess over a combined $1,000,000 WC/EL self insured retention.  The ACE Excess WC/EL Policy insured Wager Contracting, subject to the terms and conditions of the ACE Excess WC/EL Policy.

14.    Because of the bar of the New York Workers' Compensation Law §11, Mr. Wager and his wife could not pursue a cause of action against his employer, Wager Contracting. Accordingly, they instituted the Civil Action against Pelham, Gisolfi and certain other design professionals not relevant here.

15.    In the Civil Action, Pelham asserted claims against Wager Contracting for common law and contractual indemnification ("Third Party Claims").

16.    In the Civil Action, the trial court entered a Decision and Order dated January 11, 2016 (Exhibit A) which, in pertinent part, granted the Wagers' motion for partial summary judgment against Pelham on their Labor Law § 240 cause of action.  The Decision and Order held that Pelham violated its nondelegable duty under Labor Law § 240 as a matter of law. Exhibit A, Decision and Order at 18 and 26.  The Decision and Order also provided that "Wager Contracting is entitled to summary judgment dismissing so much of the District's [Pelham] third-party cause of action as seeks indemnification for sums up to the limits of the policy insuring both Wager Contracting and the District [Pelham]."  Exhibit A, Decision and Order at 26. Neither of the cited references in the Decision and Order clearly identified by either policy or amount the "limits of the policy insuring both Wager Contracting and Pelham."  The Decision and Order left for trial a number of issues, including the amount of damages to be awarded the Wagers.

4

**B.        The NGM Primary Policy**

17.        During the Civil Action, the NGM Primary Policy provided a defense and coverage up to its remaining limit of liability of $529,166.52 to Pelham, Wager Contracting and Gisolfi.  The NGM Primary Policy had separately responded to and paid other claims arising out of the same incident resulting in a partial exhaustion of the NGM Primary Policy limit of liability.

18.        As part of the funding of the Settlement of the Civil Action, the remaining NGM Primary Policy limit was exhausted.

19.        With respect to both Pelham and Wager Contracting, the NGM Primary Policy provides that: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "Bodily injury" … to which this insurance applies."  NGM Primary Policy, Commercial General Liability Coverage Form, Section I – COVERAGES, COVERAGE A. 1.a.

20.        With respect to Wager Contracting, Exclusions d and e to the NGM Primary Policy exclude from coverage Workers' Compensation And Similar Laws and Employer's Liability, respectively, unless liability is assumed by contract.  *See* NGM Primary Policy, Commercial General Liability Coverage Form at page 2 of 12.  The relevant provision precludes coverage for bodily injury to: "(1) an employee of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the Insured's business;…."  The exclusion further provides that it "applies: (1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any other obligation to share damages with or repay someone else who must pay damages because of injury."  However, the policy provides that **"[t]his exclusion does not apply to liability assumed by the insured under an 'insured contract**.'" (emphasis added).

21.    The definition of "insured contract" in the NGM Primary Policy means, in pertinent part: "9.f.  that part of any other contract or agreement pertaining to your business….under which you assume the tort liability of another party to pay for 'bodily injury'…to a third person….  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."  The contract between Pelham and Wager Contracting meets the definition of an insured contract.

### C.    The AGLIC Excess Policy

22.    AGLIC issued a Certificate of Insurance identifying Wager Contracting as a Participant/Named Insured under the AGLIC Excess Policy for the policy period applicable to Mr. Wager's date of injury.

23.    During the pendency of the Civil Action, Wager Contracting asserted that it was entitled to coverage under the AGLIC Excess Policy.

24.    During the pendency of the Civil Action, Pelham asserted that it was entitled to additional insured coverage under the AGLIC Excess Policy for the allegations set forth in the Civil Action.

25.    On February 9, 2016, AGLIC through its counsel sent a letter to Pelham and its counsel which, in pertinent part, acknowledged that Pelham was an additional insured under the AGLIC Excess Policy subject to the terms and conditions of the AGLIC Excess Policy.

26.    As relevant to this action, the AGLIC Excess Policy provided follow form liability coverage to the NGM Primary Policy as follows:

> Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by the insurance in excess of the total applicable limits of **underlying insurance**.  With respect to **Coverage A**, the terms and conditions of **underlying insurance** are made a part of this policy, except with respect to:

1.      Any contrary provision contained in this policy; or

2.      Any provision in this policy for which a similar provision is not contained in **underlying insurance**.

With respect to the exceptions stated above, the provisions of this policy will apply.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then **Coverage A** does not apply to such damages.

**Underlying insurance** "means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy."  The NGM Primary Policy qualifies as Underlying Insurance.

###   D.      The ACE Excess WC/EL Policy

27.      During the pendency of the Civil Action, the ACE Excess WC/EL Policy provided excess reimbursement coverage to Wager Contracting, subject to the terms and conditions of the ACE Excess WC/EL Policy.

28.      The ACE Excess WC/EL Policy contains a New York Endorsement which provides unlimited EL coverage for "Ultimate Net Loss" in excess of the $1,000,000 combined WC/EL retention.  The EL coverage in the ACE Excess WC/EL Policy excludes coverage for liability assumed under contract.  ACE Policy, Part Two – Employers Liability, E. Exclusions 1.

29.      As a result of the injuries suffered by Mr. Wager, the payments to and on behalf of Mr. Wager of compensation and other benefits required by the New York Workers' Compensation Laws exceeded the $1,000,000 combined WC/EL retention.

###   E.      The Settlement and the Interim Funding Agreement

30.      On June 16, 2016, the Settlement of the Civil Action was concluded for the total sum of $24 million.

7

31.     AGLIC as the insurer for Pelham should have tendered its full $5,000,000 limit as part of the Settlement.  AGLIC provided common insurance to both Pelham and Wager Contracting.  The antisubrogation rule therefore barred any attempt by AGLIC to limit its obligations to Pelham or recover from Wager Contracting based on a theory of indemnification owed by Wager Contracting to Pelham because AGLIC insures both Wager Contracting and Pelham on the same risk.  The antisubrogation rule also bars AGLIC from seeking recovery from ACE as Wager Contracting's insurer any payment AGLIC was obligated to make on Pelham's behalf.

32.     Due to the amount of the Settlement and AGLIC's obligation to Pelham, Wager Contracting's contractual and common law indemnification obligations should not be apportioned between the AGLIC Excess Policy and the ACE Excess WC/EL Policy.

33.     On June 24, 2016, ACE and AGLIC completed the execution of the Interim Funding Agreement.

34.     Pursuant to the terms of the Interim Funding Agreement ACE and AGLIC agreed:

a.     That the Settlement is reasonable and to the extent required ACE and AGLIC provided consents and authorizations to conclude the Settlement.  Interim Funding Agreement at pages 1 and 2;

b.     That "except for those issues reserved in Section V of the Interim Funding Agreement, all conditions precedent to coverage, to the extent any have been asserted and/or exist, under the AGLIC Excess Policy and/or the ACE Excess WC/EL Policy, have been satisfied.  Each of ACE and AGLIC further warrant, represent and agree that no such condition precedent to coverage, to the extent any exist, will be raised."  Interim Funding Agreement at page 2.

35.     In the Interim Funding Agreement at 3-4, ACE and AGLIC further agreed that:

ACE and AGLIC reserve their respective rights and defenses only as to the following issues in order to have the Funding Dispute and the amount of the Interim Funding Payment judicially determined:

1. Whether the anti-subrogation doctrine precludes the indemnification claims against Wager Contracting in excess of the exhausted NGM Policy limits. Nothing set forth in the statement of this issue is intended to limit argument related to the effect, if any, of the court's January 11, 2016 Order.

2. Whether Wager Contracting's contractual and common law indemnification obligations should be apportioned between Wager Contracting's AGLIC Excess Policy and the ACE Excess WC/EL Policy.

36. Each of AGLIC and ACE made the payments required pursuant to the Interim Funding Agreement, with ACE making an additional payment of $17,970,833.48 in order to complete the funding of the $24,000,000 Settlement.

37. ACE now seeks a declaration that AGLIC is required to pay to ACE its full $5 million Excess Policy limit which would include the recovery of the $3,500,000 that ACE paid pursuant to the Interim Funding Agreement.

**COUNT I – DECLARATORY JUDGMENT THAT THE AGLIC EXCESS POLICY MUST PAY ITS FULL LIMITS BECAUSE THE ANTISUBROGATION RULE PRECLUDES INDEMNIFICATION CLAIMS TO THE EXTENT OF THE COVERAGE COMMON TO BOTH PELHAM AND WAGER CONTRACTING**

38. ACE incorporates by reference the preceding paragraphs as though fully set forth herein.

39. The AGLIC Excess Policy provided common insurance to both Pelham as an additional insured and Wager Contracting as the Insured.

40. Pelham's liability was adjudicated in accordance with the Decision and Order. Exhibit A. The Settlement was reasonable and all conditions precedent to coverage were satisfied. Interim Funding Agreement.

41. Accordingly, AGLIC should have tendered its entire $5,000,000 limits toward the

9

Settlement, *i.e.,* the $3,500,000 remainder of the AGLIC Excess Policy Limits that AGLIC did not pay in connection with the Settlement.

42.   ACE therefore seeks a declaration that AGLIC must pay to ACE the full $5,000,000 limits of the AGLIC Excess Policy for the Settlement because the antisubrogation rule precludes any indemnification claim by AGLIC to the extent of the coverage common to both Pelham and Wager Contracting.

**COUNT II –DECLARATORY JUDGMENT THAT DUE TO THE ANTISUBROGATION RULE, THE AMOUNT OF THE SETTLEMENT AND AGLIC'S OBLIGATION TO PELHAM, THE HOLDING IN *TULLY CONSTRUCTION V. ILLINOIS NATIONAL INS. CO.* DOES NOT APPLY**

43.   ACE incorporates by reference the preceding paragraphs as though fully set forth herein.

44.   The Decision and Order finding Pelham liable for Wager's injuries obligated AGLIC to tender the full $5 million limit of the AGLIC Excess Policy in payment of the Settlement given the extent of Mr. Wager's injuries.  As such, the antisubrogation rule bars AGLIC from pursuing a recovery of its policy limits from ACE.

45.   ACE understands that the AGLIC Position that the ACE Excess WC/EL Policy should respond to this loss without the participation of AGLIC is based on *Tully Construction v. Illinois National Ins. Co.,* 131 A.D.3d 598 (2d Dep't 2015) (Zurich American Insurance Company as EL carrier liable where it provided *primary* EL coverage to employer and Illinois National was an *excess* general liability carrier).

46.   *Tully* does not apply here because the antisubrogation rule did not apply in *Tully*, and *Tully* was limited to the responsibility of *a primary* EL carrier vis a vis the responsibility of an *excess* general liability carrier.  In this case, AGLIC was responsible to provide coverage to Pelham whereas ACE had no responsibility to provide coverage to Pelham since Pelham was not

10

an ACE insured.  Thus, the ACE policy did not apply to Pelham's damages covered by the

AGLIC Excess Policy.  In addition, both carriers ACE and AGLIC are at the same level of

coverage – excess.

47.    Accordingly, ACE seeks a declaration that *Tully* does not apply here and that

AGLIC must pay ACE the full $5,000,000 limits of the AGLIC Excess Policy for the Settlement

in accordance with the terms of the Interim Funding Agreement.

## V.    **REQUEST FOR RELIEF**

WHEREFORE, plaintiff, ACE, respectfully requests and prays for the following relief:

a.    A declaration as set forth in Count I that AGLIC  must pay ACE the full

$5,000,000 limits of the AGLIC Excess Policy for the Settlement because the antisubrogation

rule precludes indemnification claims to the extent of the coverage common to both Pelham and

Wager Contracting;

b.    A declaration as set forth in Count II that *Tully* does not apply here and AGLIC

must pay ACE the full $5,000,000 limits of the AGLIC Excess Policy for the Settlement in

accordance with the terms of the Interim Funding Agreement; and

11

c.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
        November 11, 2016

                                        Respectfully submitted,

                                        DUANE MORRIS LLP

                                        By:_____/s/Kevin J. Fee_____
                                              Kevin J. Fee (KF-8818)
                                              Amy C. Gross (AG-8836)
                                              Lewis R. Olshin
                                              (Pro Hac Vice to be filed)
                                        Attorneys for Plaintiff
                                        ACE American Insurance Company