# EXHIBIT A

FILED: WESTCHESTER COUNTY CLERK 01/13/2016 09:53 AM INDEX NO. 68572/2012
NYSCEF DOC. NO. 444                                                    RECEIVED NYSCEF: 01/11/2016

To commence the statutory time for appeals as of right
(CPLR 5513[a]), you are advised to serve a copy
of this order, with notice of entry, upon all parties.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X
RICHARD WAGER and SANA WAGER,

                        Plaintiffs,

                  -against-

PELHAM UNION FREE SCHOOL DISTRICT, SAVIN
ENGINEERS, P.C., ROBERT FIRNEIS, NEW YORK CITY
HEALTH & HOSPITALS CORPORATION, PETER
GISOLFI ASSOCIATES, ARCHITECTURE, LANDSCAPE
ARCHITECTURE, LLP, and ANASTOS ENGINEERING
ASSOCIATES,

                        Defendants.
------------------------------------------------------------------X
PELHAM UNION FREE SCHOOL DISTRICT,

                    Third-party plaintiff,

                  -against-

WAGER CONTRACTING CO., INC.,

                    Third-party defendant.
------------------------------------------------------------------X
SAVIN ENGINEERS, P.C., and ROBERT FIRNEIS,

                  Second third-party plaintiffs,

                  -against-

PETER GISOLFI ASSOCIATES,

                  Second third-party defendant.
------------------------------------------------------------------X
CONNOLLY, J.

-1-

The following papers were considered in connection with: (1) the motion of the defendant Anastos Engineering Associates (Seq. No. 2) for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it; (2) the motion of the defendant New York City Health and Hospitals Corporation (Seq. No. 3) for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it; (3) the motion of the defendants/second third-party plaintiffs Savin Engineers, P.C., and Robert Firneis (Seq. No 4) for summary judgment dismissing the plaintiffs' causes of action pursuant to Labor Law §§ 200, 240 (1), and 241 (6) and for loss of consortium, dismissing all cross-claims, and for contractual and common law indemnification against the third-party defendant Wager Contracting Co., Inc.; (4) the motion of the defendant/third-party plaintiff Pelham Union Free School District (Seq. No. 5) for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it, for summary judgment on its cross-claims, and for summary judgment on its third-party causes of action against the third-party defendant Wager Contracting Co., Inc.; (5) the motion of the defendant Peter Gisolfi Associates, Architects, Landscape Architecture, LLP (s/h/a Peter Gisolfi Associates, Architecture, Landscape Architecture, LLP) (Seq. No. 6) for summary judgment dismissing the complaint, all cross-claims, and third-party claims insofar as asserted against it; (6) the plaintiffs' motion for partial summary judgment against the defendant Pelham Union Free School District (Seq. No. 7) on their cause of action pursuant to Labor Law § 240 (1); (7) the motion of third-party defendant Wager Contracting Co., Inc. (Seq. No. 8) for summary judgment dismissing the complaint and third-party complaint insofar as asserted against it; (8) the cross motion of the defendant Anastos Engineering Associates (Seq. No 9) for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it; (9) the cross motion of third-party defendant Wager Contracting Co., Inc. (Seq. No. 10) dismissing the cross-claims of the defendants/second third-party plaintiffs Savin Engineers, P.C., and Robert Firneis to the extent of Wager Contracting Co., Inc.'s insurance coverage being afforded to and covering those parties; and (10) the cross motion of third-party defendant Wager Contracting Co., Inc. (Seq. No. 11) dismissing the third-party complaint insofar as asserted against it up to the extent of, and up to the limits of, the amount of Wager Contracting Co., Inc.'s coverage being afforded to and covering the defendant/third-party plaintiff Pelham Union Free School District:

| | |
|---|---|
| Anastos' notice of motion (Seq. No. 2), affirmation, affidavit, exhibits, memo of law | 1-9 |
| Plaintiffs' affirmation in opposition, exhibits | 10-35 |
| Anastos' reply affirmation, memo of law | 36 |
| NYCHHC's notice of motion (Seq. No. 3), affirmation, exhibits | 37-51 |
| Savin and Firneis's notice of motion (Seq. No. 4), affirmation, exhibits | 52-83 |
| Pelham's notice of motion (Seq. No. 5), affirmation, affidavits, exhibits | 84-131 |
| Gisolfi's notice of motion (Seq. No. 6), affirmation, exhibits, memo of law | 132-158 |
| Plaintiffs' notice of motion (Seq. No. 7), affirmation, exhibits | 159-187 |
| Wager Contracting's notice of motion (Seq. No. 8), affirmation, exhibits | 188-210 |
| Anastos' notice of cross motion (Seq. No. 9), affirmation | 211-212 |
| Savin and Firneis' affirmation in opposition to Pelham's motion, exhibits | 213-220 |
| Wager Contracting's affirmation in opposition to Gisolfi's motion, | |

| | |
|---|---|
| exhibits | 221-226 |
| Wager Contracting's affirmation in opposition to the plaintiffs' motion | 227-238 |
| Wager Contracting's notice of cross motion against Savin and Firneis (Seq. No. 10), affirmation, exhibits | 239-244 |
| Gisolfi's affirmation in opposition to Pelham's motion | 245 |
| Plaintiffs' affirmation in opposition to NYCHHC's motion, exhibits | 246-252 |
| Pelham's affirmation in opposition to the plaintiffs' motion | 253-256 |
| Plaintiffs' affirmation in opposition to Anastos' cross motion | 257 |
| Plaintiffs' affirmation in opposition to the motions of Pelham, Savin and Firneis, Gisolfi, and Wager Contracting, exhibits | 258-283 |
| Wager Contracting's notice of cross motion against Pelham (Seq. No. 11), affirmation, exhibits | 284-290 |
| Pelham's affirmation in opposition to Gisolfi's motion, exhibits | 291-294 |
| Pelham's affirmation in reply/opposition to Wager Contracting's cross motion, exhibits | 294-301 |
| Pelham's reply/opposition affirmation to Gisolfi's motion | 302-303 |
| Plaintiffs' reply affirmation, exhibits | 304-309 |
| Wager Contracting's reply/opposition to the plaintiffs' motion, exhibits | 310-312 |
| NYCHHC's reply affirmation | 313 |
| Savin and Firneis' reply affirmation to plaintiffs' opposition | 314 |
| Savin and Firneis' reply affirmation to Wager Contracting's opposition, exhibits | 315-318 |
| Gisolfi's reply affirmation, exhibits, memo of law | 319-321 |
| Gisolfi's affirmation in opposition to Wager Contracting's cross motion, exhibits | 322-324 |
| Wager Contracting's reply to Pelham's opposition to its cross motion | 325 |
| Wager Contracting's reply to Savin and Firneis' opposition to its cross motion | 326 |

On October 31, 2009, the plaintiff Richard Wager (hereinafter the plaintiff or Wager) was injured while participating in the partial demolition of a portion of the Colonial Elementary School (hereinafter the Colonial School or the school), owned by the defendant Pelham Union Free School District (hereinafter the District), when the roof of the building on which he was standing collapsed, causing him to fall to the story below. Following the accident, the plaintiff, who was unresponsive, was taken to Jacobi Medical Center (hereinafter JMC), owned by the defendant New York City Health and Hospitals Corporation (hereinafter NYCHHC), where he received care for, among other things, catastrophic brain injury for over one month. On November 10, 2009, while the plaintiff was undergoing an MRI at JMC, he was temporarily deprived of oxygen when his endotracheal tube dislodged, causing him to go into asystole (i.e., a "flat line"), requiring resuscitation.

The plaintiff and his wife, the plaintiff Sana Wager, suing derivatively, commenced this action asserting causes of action pursuant to Labor Law §§ 200, 240 (1), and 241 (6) against the District, Savin Engineers, P.C. (hereinafter Savin Engineers), and Robert Firneis (hereinafter Firneis)

-3-

to recover damages for personal injuries Wager allegedly sustained as a result of the demolition accident. With respect to their cause of action pursuant to Labor Law § 241 (6), the plaintiffs allege that the defendants violated the following provisions of the New York State Industrial Code: §§ 23-1.7, 23-1.8, 23-1.15, 23-1.16, 23-1.17, 23-1.22, 23-1.24, 23-1.32, 23-2.3, 23-3.1, 23-3.2, 23-3.3, 23-3.4, 23-4.1, 23-5.1, and 23-9.2. The plaintiffs further allege that the defendants violated the following regulations promulgated by the Occupational Health and Safety Administration: 29 CFR 1926.21 (b) (2), 29 CFR 1926.20 (b) (1), 29 CFR 1926.20 (b) (2), 29 CFR 1926.501 (b) (1) and 29 CFR 1926.850 (a).

The plaintiffs commenced a separate action against NYCHHC for medical malpractice relating to Wager's treatment at JMC in Bronx County Supreme Court, which was removed and consolidated with this action by order of this Court (Tolbert, J.), dated November 30, 2011.[1]

In addition to various cross-claims between the defendants, the District commenced a third-party action against the plaintiff's employer, the third-party defendant Wager Contracting Co., Inc. (hereinafter Wager Contracting) for common-law and contractual indemnification, and Savin Engineers and Firneis commenced a second third-party action against the project architect, Peter Gisolfi Associates (hereinafter Gisolfi Associates).

The plaintiffs also commenced a separate action against Gisolfi Associates and Anastos Engineering Associates (hereinafter Anastos Engineering), which was consolidated with the main action by so-ordered stipulation dated May 21, 2013 (Lefkowitz, J.).

Ten separate motions and cross motions for summary judgment are presently pending before this Court, which are decided as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Relevant deposition testimony

#### A. The plaintiff

At his deposition, due to his injuries, the plaintiff was limited to answering yes-or-no questions through non-verbal communication. The plaintiff indicated that he had no memory of the Colonial School, the accident, or his treatment at JMC.

#### B. Gregory Wager on behalf of Wager Contracting

The president of Wager Contracting, Gregory Wager, who is also the plaintiff's son, testified at his depositions that Wager Contracting was retained by the District to demolish the upper portion

---

[1] The order of consolidation was affirmed by the Appellate Division (*see Wager v Pelham Union Free Sch. Dist.*, 108 AD3d 84 [2d Dept 2013]).

of an addition to the Colonial School that had been previously constructed. Prior to this job, although Wager Contracting did not market itself in the area of demolition, it had completed six smaller demolition projects involving building interiors and/or sidewalk blasting.

This project required Wager Contracting to, among other things, carefully dismantle the top portion of the existing addition, while leaving the lower level intact for inclusion in the expansion project. Prior to starting the demolition, Wager Contracting reviewed plans that depicted the portions of the building to be demolished. Gregory Wager described Savin Engineers, the construction manager for the project, as the "middleman" between Wager Contracting and the District. Wager Contracting received plans from representatives of both Savin and the District, and completed a walkthrough of the site with representatives of Savin Engineers and Gisolfi Associates. However, Savin Engineers did not instruct Wager Contracting as to the means and methods to accomplish the demolition.

Gregory Wager acknowledged that, under the contract with the District, Wager Contracting was responsible for "initiating, maintaining, and supervising all safety precautions and programs" in connection with its work. Although Wager Contracting submitted a safety program to the District requiring Wager Contracting to assign a safety manager to the project, Gregory Wager admitted that no such safety manager was ever retained.

In order to leave the lower level of the building intact, pieces of precast concrete had to be removed from the upper level and lowered to the ground. Prior to the accident, Wager Contracting had dismantled the acoustical ceiling within the structure and completed the demolition of a brick veneer that served no structural purpose. Gregory Wager testified that Wager Contracting relied upon the description in the A-051 demolition drawing, which specifically noted that the brick wythe was veneer. Although Gregory Wager was not present on the site at the moment of the collapse, he was informed that, on the morning of the accident, Wager Contracting's workers had cut rebar supporting the concrete roof. The District provided no tools or safety devices to Wager Contracting. However, Gregory Wager was of the opinion that no safety equipment was required, as there was no anticipated risk of a person falling through the roof.

### C. Salvatore Cavallaro on behalf of Wager Contracting

Salvatore Cavallaro, a field supervisor for Wager Contracting who was present at the time of the accident, testified that, just prior to the collapse, the workers were bringing equipment down from the roof and cleaning the roof. Although most of the workers had come down from the roof for lunch at the time of the collapse, the plaintiff and Rogerio remained behind. The plaintiff was standing in the middle of the roof when it collapsed, which Cavallaro described as falling in a "straight down" manner.

### D. Silvio Zhagui on behalf of Wager Contracting

Silvio Zhagui, an employee of Wager Contracting, testified that demolition began on the day

of the accident. This was Silvio's first demolition project. Prior to the accident, Zhagui used the excavator to remove the parapet along the roof of the building.

### E. Angelo Rubbo on behalf of the District

Angelo Rubbo, the District's assistant superintendent for business, was a member of the District's construction committee for the project. The committee also included Gisolfi Associates, the project architect, and Savin Engineers, the owner's representative/construction manager for the project. After Wager Contracting placed the low bid on the project, a meeting was held with the plaintiff and representatives of Savin Engineers, Gisolfi Associates, and the District to discuss Wager Contracting's qualifications to perform. Ultimately, Wager Contracting was selected as the contractor. Although the contract with Wager Contracting stated that demolition was not to be performed until a schedule of operations was jointly formulated by the owner, contractor, and architect, Rubbo had no knowledge of any such schedule ever being created. The District made no effort to ensure that workers had safety equipment, as this was Wager Contracting's responsibility.

### F. Frank Craine on behalf of Gisolfi Associates

Franke Craine, an architect and partner in Gisolfi Associates, testified that the project involved the removal of a portion of the school for the purposes of constructing two classrooms and a library. Gisolfi Associates was the project architect and was responsible for, among other things, creating the project design development drawings and the construction documents. The drawings were given to Anastos Engineering, a structural engineering firm retained by Gisolfi Associates, to create the construction documents. As part of this process, Gisolfi Associates created three demolition drawings, entitled "Demolition Plan A-050," "Demolition Elevations A-051," and "Demolition Sections A-052," depicting the areas of the existing structure required to be removed. Drawing A-051 labels an area of the north-facing wall as "brick veneer," which Craine did not believe was load-bearing. However, Gisolfi Associates did not specify the means or methods of the demolition in these plans. Gisolfi Associates was in possession of a blueprint of the Colonial School created in 1926 known as "Drawing 502," however, that drawing was not included in the bid package that went out to potential contractors in the bidding process that led to the retention of Wager Contracting. Craine believed that the accident was caused when "[t]he roof structure was cut and the exterior wall of the first floor was removed which destabilized the building and caused it to collapse on itself" (Craine Deposition at 48).

### G. Nathaniel Smith on behalf of Simpson Gumpertz & Heger

After the collapse, the District retained the engineering/consulting firm of Simpson Gumpertz & Heger (hereinafter SGH) to study the causes of the accident and determine whether the remaining school structure was safe to occupy. Nathaniel Smith, a senior project manager at SGH, testified that he was in charge of the SGH investigation. In reviewing the construction plans, Smith noted that, although the project drawings and specifications did not include a specific procedure for conducting the demolition, it was not an unusual practice to leave the means and methods of demolition to the

-6-

contractor. SGH concluded that the collapse was due to improper sequencing of the demolition by Wager Contracting. Smith further testified that the roof structure was a "concrete joist slab system," which is uncommon today, but was commonly used in the early 1900's. SGH's report also stated that the removal of the wythe of brick from a north facing wall could have had some effect on the load carrying capacity of the wall, noting that the brick was improperly labeled as "veneer" when, in fact, the brick was laid out in a Flemish bond pattern that provided stability to the wall structure (Smith Deposition at 131-132).

### H. Chris Anastos on behalf of Anastos Engineering

Chris Anastos, a principal of Anastos Engineering, testified that Anastos Engineering provided structural engineering services to Gisolfi Associates in connection with the Colonial School project. Anastos Engineering had no involvement in providing safety equipment for workers on site.

### I. Michael Lynch on behalf of Anastos Engineering

Michael Lynch, an engineer employed by Anastos Engineering, testified that, during the design phase of the project, Gisolfi Associates and Anastos Engineering exchanged and reviewed each others' drawings. Lynch performed walk-throughs of the existing structure prior to commencement of any demolition work. Lynch testified that, although he was aware that shoring would be necessary during the demolition of the existing structure, he did not discuss that with any other parties, as this was a matter involving the contractor's means and methods.

### J. Robert Firneis on behalf of Savin Engineers

Robert Firneis is a registered architect employed by Savin Engineers. As the project's construction manager, Savin Engineers was responsible for, among other things, keeping daily logs for the project, and submitting progress reports to the District. A Savin Engineers' employee, Vincent Sessano, was its project manager assigned to the site on a daily basis. Sessano was supervised by Nancy Theriault. Savin Engineers did not provide Wager Contracting with any tools, equipment, or safety devices in connection with the demolition, and was not involved in Wager Contracting's decision-making as to how the demolition should proceed. Savin Engineers had a trailer on the construction site and part of Sessano's job was to monitor the project. On the date of the accident, which occurred on a Saturday, both Sessano and Theriault were unavailable, so Firneis was physically present on the site as Savin Engineers' representative. Firneis testified that Savin Engineers' contract authorized it to stop work on the project. At the time the roof collapsed, the workers were beginning to break for lunch.

### K. Nancy Theriault

Nancy Theriault, who was on the site on a regular basis as a representative of Savin Engineers, testified, among other things, that Savin Engineers did not have the authority to stop the demolition in the event that it observed an unsafe demolition or construction practice. Theriault

emphasized Savin Engineers' role at the site as a construction manager, and not as a safety officer.

## II. The pending motions

### A. Anastos Engineering's motion for summary judgment

Anastos Engineering moves for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it, submitting, among other things, the affidavit of its principal, Chris Anastos. Anastos avers that Anastos Engineering was retained by the District to provide structural engineering services in connection with the new addition to the Colonial School. According to Anastos, Anastos Engineering prepared plans for the new construction to the school, but was not retained, and did not provide any services relating to the demolition of a portion of the existing school. Anastos Engineering was not present on the site as the demolition proceeded. After the plaintiff's accident, Anastos Engineering was retained by the school to prepare a report to determine whether the adjacent portions of the existing structure were safe to occupy. In its memorandum of law, Anastos Engineering argues that it cannot be held liable pursuant to Labor Law §§ 240 (1) and 241 (6) since professional engineers are specifically excluded from liability under those statutes where they do not direct or control the work for activities other than planning and design. Further, Anastos Engineering argues that it cannot be held liable pursuant to Labor Law § 200 since it exercised no supervisory control over the demolition.

In opposition, the plaintiffs submit, among other things, the expert affidavit of Robert J. O'Connor, P.E., who opines that the primary cause of the accident was Wager Contracting's cutting through 13 of 18 concrete joists in the roof's joist-slab structure. He further opines that drawing A-051 mislabeled a brick wall as veneer, and that this wall was in fact load-bearing. The removal of this brick wall mislabeled as veneer was not the "primary" cause of the collapse but, in O'Connor's opinion, it contributed to the accident by weakening the overall structural strength and stability of the northwest extension before the roof slab was cut. O'Connor opines that Anastos Engineers departed from good and accepted engineering practice by failing to properly perform and document an engineering survey of the structure, which would have documented the "unusual" structural composition of the existing building. This survey would have included and confirmed the components of the roof identified in Drawing 502 (the 1926 blueprint of the school). Further, Anastos Engineering should have performed a surface saw cut on the roof to determine whether the steel in the concrete roof was either primary or secondary reinforcing steel. Because Anastos Engineering failed to do this survey, Wager Contracting and its employees were not aware of the significance of their demolition methods.

In support of his analysis, O'Connor notes that, following the accident, the federal Occupational Safety and Health Administration ("OSHA") issued a citation and penalty to Wager Contracting for, among other things, the failure to have a written engineering survey performed by a competent person available at the job site (see 29 CFR 1926.850 [a] ["Prior to permitting employees to start demolition operations, an engineering survey shall be made, by a competent person, of the structure to determine the condition of the framing, floors, and walls, and possibility

-8-

of unplanned collapse of any portion of the structure. Any adjacent structure where employees may be exposed shall also be similarly checked. The employer shall have in writing evidence that such a survey has been performed."]). Additionally, O'Connor opines that Anastos Engineering departed from good and accepted engineering practice by failing to ensure that the information contained in Drawing 502 was made available to Wager Contracting prior to demolition, by failing to create a shoring plan for the demolition, failing to ensure the structural strength and stability of the structure during the demolition, and by failing to be responsible for the accuracy of the drawings created for the demolition.

In reply, Anastos Engineering argues that it cannot be held liable since it did not perform engineering services related to the demolition work, did not sign and/or seal the demolition plans (which were signed and sealed by Gisolfi Associates), and committed no affirmative act of negligence.

## B. NYCHHC's motion for summary judgment

NYCHHC moves for summary judgment dismissing all claims insofar as asserted against it, arguing that its care of the plaintiff did not deviate from the standard of care and that such care, in any event, was not the proximate cause of the plaintiff's injuries. In an expert affirmation in support, Douglas S. Cohen, M.D., a board certified neurosurgeon, opines that the plaintiff arrived at JMC in a neurologically devastated state, which was caused by the collapse at the Colonial School. From October 31, 2009 to November 9, 2009, the plaintiff was in an unresponsive and comatose state, and he remained a three on the Glasgow Coma Scale. Cohen opines that the dislodgment of the plaintiff's endotracheal tube on November 10, 2009 during an MRI was not "in and of itself, evidence of negligence." After the plaintiff went into asystole, he was successfully resuscitated. On November 11, 2009, the plaintiff's condition remained in an unresponsive and comatose state and registering a three on the Glasgow Coma Scale, essentially unchanged as compared to his condition prior to the dislodgement of his endotracheal tube. Further, EEGs of the plaintiff prior to and after November 10, 2009 showed similar findings—abnormalities indicative of severe diffuse cerebral dysfunction. Cohen opines, to a reasonable degree of medical certainty, that the care and treatment rendered to the plaintiff was appropriate and well within the standard of good and accepted medical treatment, and that there is no evidence to support the proposition that his general condition was impacted by the endotracheal tube dislodgment in any significant way. NYCHHC also submits the affirmation of Ian H. Newmark, M.D., an expert in the area of critical care, who opines that none of the plaintiff's injuries were caused or exacerbated by his care at JMC. Newmark affirms that endotracheal tube dislodgment is a common occurrence that may happen for any number of non-negligent reasons. Newmark opines that "it is simply impossible to quantify and prove that plaintiff sustained any further brain damage following the events of November 10, 2011."

In opposition, the plaintiffs submit, among other things, the affirmations of Lawrence Shields, M.D., a board certified neurologist, who opines with a reasonable degree of medical certainty that negligent medical care and departures from the standards of accepted medical practice on November 10, 2009 were substantial contributing factors to the plaintiff's injuries and to his

-9-

current severely neurologically impaired condition. Specifically, Shields opines that, in addition to the dislodgement of the tube itself constituting a departure, there were further departures from accepted medical practice by JMC in delaying reintubation of the plaintiff, failing to promptly call someone to resinsert the tube, failing to promptly reinsert the tube at the completion of the MRI, and in transporting the plaintiff back to SICU without reinserting the tube. Further, in reference to the opinions of NYCHHC's experts that an endotracheal tube may become dislodged for a non-negligent reason, Shields opines that, while an agitated patient may in some cases self-extubate, the endotracheal tube of a properly sedated patient will not become dislodged absent negligence, such as in the negligent transfer of a patient to the MRI or in the manner in which he is inserted into the MRI scanner. Additionally, Shield opines that cardiac arrest requiring ACLS resuscitation is, in and of itself, a significant injury. In Shields' opinion, the plaintiff's cardiac arrest was caused by hypoxia, i.e., a diminution of oxygen, which was significant enough to cause additional neurologic damage. Further, Shields opines that the cardiac arrest, resulting in a complete stoppage of flow, caused severe permanent brain damage (in addition to the brain damage he had already sustained prior to his hospitalization).

## C. Savin Engineers and Firneis's motion for summary judgment

Savin Engineers and Firneis move for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them, and for summary judgment granting them contractual and common-law indemnification from Wager Contracting. As an initial matter, Savin Engineers and Firneis contend that all claims and cross-claims asserted against Firneis in his individual capacity should be dismissed, as Firneis, an employee of Savin Engineers, did not contract in his individual capacity to perform any work on the subject project, nor is there any evidence that he was personally negligent. With respect to the plaintiffs' cause of action pursuant to Labor Law § 200, Savin Engineers contends that it had no control over the means and methods of the plaintiff's work, that it was not responsible for site safety, and that it did not have actual or constructive notice of any defective conditions. Savin Engineers also contends that it cannot be held liable under the plaintiffs' Labor Law §§ 240 (1) and 241 (6) causes of action because it did not supervise, direct, or control the means and methods of the plaintiff's work, the plaintiff was the sole proximate cause of his accident, and because the Industrial Code Provisions cited by the plaintiffs are inapplicable.

In support of the branches of the motion which are for contractual and common-law indemnification from Wager Contracting, Savin submits the contract between itself and Pelham, a Standard Form of Agreement Between Owner and Construction Manager (AIA Document B801/CMa), which provides, in relevant part:

> With respect to each Contractor's own Work, the Construction Manager shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are solely the Contractor's responsibility under the Contract for Construction. The Construction Manager shall not be responsible for a Contractor's failure to carry out

the Work in accordance with the respective Contract Documents. The Construction Manager shall not have control over or charge of acts or omissions of the Contractors, Subcontractors, or their agents or employees, or any other persons performing portions of the Work not directly employed by the Construction Manager.

(Savin Exhibit CC § 2.3.15 [Agreement Between Owner and Construction Manager]). Savin further submits the contract between Pelham and Wager Contracting, a Standard Form of Agreement Between Owner and Contractor (AIA Docutment A101 - 1997), which incorporates by reference General Conditions of the Contract for Construction (AIA Document A201 - 1997) (hereinafter the General Conditions), which provide, in relevant part, that the term "Owner's Representative" is defined to include any "Construction Manager" retained by the owner (*see* General Conditions § 1.1.17). The General Conditions provide:

In no event shall the Owner, Construction Manger, or Architect have control over, charge of, or responsibility for construction means, methods, techniques, sequences or procedures or for safety-precautions and programs in connection with the Work, notwithstanding the rights and authority granted the Owner in the Contract Documents

(General Conditions § 2.5.2). Additionally, the General Conditions provide:

The Contractor shall indemnify and hold harmless the Owner, Architect and Owner's Representative from any and all claims, damages, losses, suits, obligations, fines, penalties, costs, charges and expenses which may be imposed upon or incurred by or asserted against any of them by reason of act or omission of such Contractor or any person or firm for whose acts such Contractor may be liable, with respect to such Contract or the performance or the performance or failure to perform the Work under such Contract.

(General Conditions § 3.18.6). Savin Contends that it is entitled to contractual indemnification from Wager Contracting pursuant to the foregoing provisions.

Further, Savin contends that it is entitled to common-law indemnification from Wager Contracting insofar as the plaintiff suffered a "grave injury," as that term is defined by Workers' Compensation Law § 11, and it was free from fault in the happening of the accident.

In opposition, the plaintiffs contend that Savin and Firneis may be held liable pursuant to Labor Law §§ 240 (1) and 241 (6) as statutory agents of the District. The plaintiffs contend that Savin, as the Construction Manager, had the authority to control the activity that brought about the plaintiff's injury. Savin's contract with the District specifically defines it as "an *agent* and a representative of the Owner with respect to this Project" (Plaintiffs' Exhibit R ¶ 2.1.2). Further, Savin's responsibilities to the District included "endeavor[ing] to obtain satisfactory performance from each of the Contractors" and "tak[ing] reasonable actions to prevent installation of work,

materials or equipment which fails to conform with the Contract Documents" (Plaintiffs' Exhibit R ¶ 2.3.7). The plaintiffs point out that Savin had three employees, Theriault, Sessano, and Firneis, who were on site and whose responsibilities included making visual inspections to determine whether the work conformed with the contract, and who all had the ability to stop work. Additionally, with respect to the Labor Law § 200 cause of action, the plaintiffs contend that the record raises triable issues of fact as to whether Savin had actual or constructive notice that brick labeled as "veneer" in the architectural demolition drawings was in fact structural.

### D. The District's motion for summary judgment

The District moves for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it, and for summary judgment on its third-party claims and cross-claims for indemnification from Wager Contracting, Savin Engineers, Firneis, NYCHHC, and Gisolfi Associates. In support, the District submits, among other things, the affidavit of Stuart Morrison, P.E., who opines, to a reasonable degree of engineering certainty, that the structure's collapse was the direct result of the actions of the plaintiff and/or Wager Contracting's employees under his direct control, in cutting the support beams for the roof. According to Morrison, approximately two-thirds of the support beams had been cut prior to the collapse, and the remaining one-third of the beams failed under the load, causing the exterior bearing wall to rotate outward and the roof to collapse. Further, cutting two-thirds of the beams was inconsistent with construction and demolition practices designed to dismantle the roof in small pieces. Drawing 502 does not reveal a significant amount of engineering or construction data that was not directly visible on the job site, as the support beams were visible from the first floor of the structure. Further, any discussion of whether a wall in the structure was a veneer (as opposed to structural masonry) is irrelevant to the causes of the collapse, as the structure of the weight-bearing wall was fully exposed. In Morrison's opinion:

> A competent, experienced contractor should have enough knowledge of load bearing structure identification to identify that the beams were supporting the roof structure, and that those beams were supported by components of the main building and the rear masonry wall. Further, a competent and experienced contractor should understand that cutting structural supports compromises the structural stability of the building, increasing the likelihood of collapse

(Morrison Affidavit ¶ 10).

The District also submits the affidavit of Rubbo, who affirms that Gisolfi Associates provided the District with Drawing 502 prior to the work commencing on the Colonial School.

With respect to the cause of action pursuant to Labor Law § 240 (1), the District seeks summary judgment on the ground that the plaintiff was the sole proximate cause of the accident, in that he was providing direction to the Wager Contracting employees who cut the supporting beams in the roof structure, which caused the collapse. With respect to the cause of action pursuant to Labor Law § 241 (6), the District contends that none of the Industrial Code violations alleged by the

-12-

plaintiffs are applicable, and the OSHA violations alleged by the plaintiffs cannot form the basis for liability. With respect to the cause of action pursuant to Labor Law § 200, the District contends that it exercised no supervision or control over the means and methods utilized in the demolition.

With respect to the District's third-party claims against Wager Contracting, the District contends that it is entitled to common-law indemnification since Wager Contracting's negligence contributed to the accident and the District was free from negligence. Further, the District contends that it is entitled to contractual indemnification pursuant to its contract with Wager Contracting, which states in relevant part:

> "To the fullest extent permitted by law . . . the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees . . . from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work . . . but only to the extent caused by the negligent actors or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them . . . regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder"

(District Exhibit X ¶ 3.18.1).

The District also moves for summary judgment dismissing all cross-claims for indemnification and contribution asserted by Savin Engineers, Wager Contracting, and NYCHHC, as it was free from negligence in the happening of the accident.

The District seeks summary judgment on its cross-claim for indemnification and contribution against Gisolfi Associates to the extent that the completeness (or incompleteness) of Gisolfi Associates' construction drawings are found to be a proximate cause of the plaintiff's injuries. Finally, the District contends that Gisolfi Associates is in breach of a contract to name the District as an additional insured on its general liability insurance policy.

Savin Engineers and Firneis oppose the branch of the District's motion which is for summary judgment dismissing their cross-claims insofar as asserted against the District, arguing that there is no evidence that Savin Engineers or Firneis were negligent.

Gisolfi Associates opposes the branch of the District's motion which is for summary judgment on its cross-claim against Gisolfi Associates for indemnification and contribution and separately moves, as discussed in more detail below, for summary judgment dismissing those cross-claims. Gisolfi Associates contends that the District has failed to establish that it was negligent with respect to the designs and plans for the project, as the plaintiffs have failed to submit an expert's opinion evincing a breach of the standard of care. With respect to the District's claim that Gisolfi Associates breached an agreement to name it as an additional insured on Gisolfi Associates' policy, Gisolfi Associates contends that the District failed to meet its prima facie burden for summary

-13-

judgment, as it failed to submit proof that the District made a claim for coverage to the carrier and that the claim was denied.

The plaintiffs oppose the District's motion and, as discussed in more detail below, separately move for partial summary judgment against the District on their Labor Law § 240 (1) cause of action. In support, the plaintiffs submit the expert affirmation of Robert J. O'Connor, P.E., who opines that the District should have provided Drawing 502 directly to Wager Contracting, which would have revealed the unusual structural configuration of the roof. O'Connor further opines that continuing inspections of the demolition site, as required by Industrial Code § 23-3.3 (c), would have revealed that the walls had been weakened as a result of demolition, which would have enabled the workers to install required shoring to prevent a collapse before work continued.

The plaintiffs contend that Wager was not the sole proximate cause of his accident, as the record establishes that there was a violation of Labor Law § 240 (1) in that no safety devices were provided to guard against the elevation-related hazard, and that such violation proximately caused his injury. With respect to the cause of action pursuant to Labor Law § 241 (6), the plaintiffs narrow their claims to assert only a violation of Industrial Code § 23-3.3 (c), which provides for "continuing inspections" during hand demolition operations. The plaintiffs contend that violations of this section, specifically, the failure to conduct continuing inspections to identify hazards resulting from the weakened floors, proximately caused Wager's injuries. With respect to the cause of action pursuant to Labor Law § 200, the plaintiffs contend that the District had the authority to supervise, direct, and control the means and methods, pointing to a provision in Wager Contracting's contract with the District which states that no demolition work shall be performed until the parties jointly establish a "schedule of operations," which schedule was ultimately never established.

E. Gisolfi Associates' motion for summary judgment

Gisolfi Associates moves for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it. In support, Gisolfi cites the contract between the District and Wager Contracting, which provides, among other things, that the Architect "will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents . . ." (Gisolfi Associates Exhibit J at General Conditions § 4.2.2). The contract also specified, with respect to Wager Contracting's responsibilities, that it was not required to "provide services which constitute the practice of architecture or engineering . . . unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures" (Gisolfi Associates Exhibit J at General Conditions § 3.12.10). In addition to demolition drawings depicting the area of the building to be demolished, Gisolfi also provided specifications for "Demolition, Removal, Cutting, & Patching," which included requirements for "Demolition Operations," that required Wager Contracting, "before starting work, make a thorough examination of those portions of the structure in which the work is to be performed" and "[r]eport to the Architect any and all conditions which may interfere with or

-14-

otherwise affect or prevent the proper execution and completion of the work" (Gisolfi Associates Exhibit O at § 3.01 [C]).

Gisolfi Associates also submits the expert affidavit of Burton L. Roslyn, a licensed architect, who opines that Gisolfi Associates did not depart from good and accepted practice in creating the demolition plans for the project, specifically, drawings A-050, A-051, and A-052. According to Rosyln, it is within standard architectural practice to generate demolition plans that do not include structural details of the existing buildings. Rather, it is standard practice for the contractor retained to perform the demolition to examine the structure itself and, if necessary, retain its own engineer to review the structure and perform an engineering survey. Additionally, according to Roslyn, although Wager Contracting was allegedly not provided with a copy of Drawing 502, a 1920's drawing of the building depicting cast-in-place concrete rib joists, all of the relevant structures to the demolition would have been visible to Wager Contracting when the interior ceiling of the building was removed. Roslyn opines that Wager Contracting's means, methods, and sequencing caused the collapse, in particular, the demolition of the top portion of the western wall and jack-hammering the reinforcing steel on 13 of the 18 support joists. Roslyn also opines that Wager Contracting's removal of the outer layer of brick wythe, labeled on the demolition drawings as "veneer," from the northern wall approximately one month prior to the collapse did not contribute to the building's instability and was not a factor that contributed to the accident.

In addition to arguing that it cannot be held liable pursuant to Labor Law §§ 200, 240 (1), and 241 (6)—which the plaintiffs concede—Gisolfi Associates argues that it owed no duty of care to the plaintiff, with whom it was not in privity of contract. Further, Gisolfi Associates contends that none of the exceptions apply to this case whereby a duty of care is created to non-contracting third parties, as it did not create or exacerbate a dangerous condition, the plaintiff could not have reasonably relied upon its performance, and Gisolfi Associates did not contract to fully displace the District's duty to maintain a safe workplace. Gisolfi Associates also contends that its mislabeling of the brick wythe as veener was not, as a matter of law, a proximate cause of the accident, and that Wager Contracting's cutting of the supporting steel in the roof constituted an intervening superceding cause of the accident. Finally, Gisolfi Associates moves for summary judgment dismissing all cross-claims and third-party claims insofar as asserted against it, arguing that it was free from negligence in the happening of the accident.

In opposition, the plaintiffs state that they do not oppose the dismissal of their Labor Law §§ 200, 240 (1), and 241 (6) causes of action insofar as asserted against Gisolfi Associates, however, they contend that there are issues of fact under a theory of common-law negligence. The plaintiffs rely upon the expert affidavit of Robert J. O'Connor, P.E., who opines, in relevant part, that the removal of a portion of brick wythe mislabeled as veneer on the architectural drawings weakened the entire structure and contributed to the collapse of the building. The plaintiffs also submit the affidavit of Robert Arthur King, FAIA, a licensed architect, who also opines that drawing A-051 erroneously mislabeled the brick wythe and that the removal of that wythe contributed to the accident. King also opines that Gislofi Associates was negligent in failing to include details regarding the structural composition of the building in its demolition drawings, and was negligent

-15-

in failing to provide Drawing 502 to Wager Contracting, as that drawing depicted the structural configuration of the roof. In King's opinion, these failures were proximate causes of the accident, since the structural composition of a building dictates the method of demolition.

Based upon the foregoing, the plaintiffs contend that Gisolfi Associates was negligent in creating plans for the demolition that did not include information about the structural composition of the roof, in mislabeling the brick Wythe as veneer, and in failing to provide Wager Contracting with Drawing 502. The plaintiffs contend that Gisolfi Associates owed the plaintiff a duty of care under all three of the *Espinal* exceptions, since (1) Gisolfi Associates affirmatively launched a force of harm and increased the risks of the demolition by creating the demolition drawings and by withholding information about the building's structural composition, (2) Wager Contracting and its employees were entitled to reasonably rely on the drawings representing that the brick wythe was veneer, and (3) because Gisolfi Associates assumed all duties to provide drawings for the project. With respect to Gisolfi Associates' arguments regarding proximate cause, the plaintiffs argue that there can be more than one cause of an accident, and cite to their experts' opinions that the removal of the brick wythe was a substantial factor in causing the accident.

### F. The plaintiffs' motion for partial summary judgment

The plaintiffs move for partial summary judgment against the District on their cause of action pursuant to Labor Law § 240 (1). In support, the plaintiffs rely upon the expert affidavit of Robert J. O'Connor, P.E., who opines, in relevant part, that the failure to provide adequate shoring of the structure during the demolition, and the failure to provide any other appropriate safety devices, was a proximate cause of the accident. The plaintiffs contend that this statutory violation, which proximately caused Wager's injury, is sufficient to entitle them to summary judgment on the issue of liability.

The District and Wager Contracting separately submit opposition to the motion, arguing that the plaintiff was the sole proximate cause of his accident. Both parties rely upon, among other things, the affidavit of Martin R. Bruno, an expert in the field of construction site safety, who opines, in relevant part, that the plaintiff was in complete control of the demolition site and Wager Contracting's employees, and that, in directing the manner of demolition, i.e., the cutting of the supporting steel joists, the plaintiff was the sole proximate cause of his accident. Bruno further opines that, since the plaintiff was working in the middle of the roof (as opposed to the edge), the plaintiff was not exposed to an elevation-related hazard that would require safety devices for fall protection. Additionally, both the District and Wager Contracting argue that, since the roof itself was the object of the demolition, there could be no violation of Labor Law § 240 (1).

### G. Wager Contracting's motion for summary judgment

Wager Contracting moves for summary judgment dismissing the plaintiffs' causes of action pursuant to Labor Law §§ 200, 240 (1), and 241 (6). Mirroring many of the arguments made by the District, Wager Contracting contends that the plaintiff was the sole proximate cause of his injury,

-16-

that none of the Industrial Code provisions asserted by the plaintiffs are applicable, and that the defendants did not supervise, direct, or control the plaintiff's work. In support, Wager Contracting submits the affidavits of Martin R. Bruno (described above) and James Cohen, P.E., who opine that the collapse was entirely due to Wager Contracting's cutting of the reinforcing steel in the roof. Cohen also opines that the removal of the brick wythe played no role in causing the accident. Wager Contracting also submits the post-accident report by Simpson, Gumpertz & Heger, the engineering firm that conducted an investigation into the accident, which concluded that the collapse was the result of "improper sequencing of the demolition work by the contractor."

The plaintiffs' arguments in opposition are presented in the same papers they filed in opposition to the District's motion (described above).

### H. Anastos Engineering's cross motion for summary judgment

Anastos Engineering cross-moves for summary judgment (Motion Seq. No. 9), which motion is redundant to its earlier-filed motion for summary judgment (Motion Seq. No. 2). In support of this cross motion, Anastos Engineering incorporates by reference the legal arguments and proof submitted by Wager Contracting into its cross motion for summary judgment (Motion Seq. No. 8).

The plaintiffs oppose the cross motion as procedurally improper, as their prior motion for summary judgment was already fully submitted and, in any event, contend that their arguments made in opposition to Wager Contracting's motion for summary judgment refute Anastos Engineering's arguments.

### I. Wager Contracting's cross motions for summary judgment dismissing all cross-claims and third-party claims insofar as asserted against it by Savin Engineers, Firneis, and the District

Wager Contracting cross-moves against Savin Engineers and Firneis, and separately against the District, for summary judgment dismissing all cross-claims and third-party claims for indemnification and contribution insofar as asserted against it. Wager Contracting argues that such claims are barred by the antisubrogation rule, since Wager Contracting's insurance carrier is providing them a defense and indemnification, up to the limits of the policy.

Savin Engineers and Firneis oppose the cross motion, arguing that the motion is untimely pursuant to *Brill v City of New York* (2 NY3d 648 [2004]) and that, in any event, the cross motion is incomplete in that it fails to annex the underlying insurance policies.

The District opposes the cross motion, also arguing that the motion is untimely pursuant to *Brill*. Additionally, the District contends that the antisubrogation issue is not yet ripe, and the Court cannot determine the priority of coverage of all implicated policies from the record.

In reply, Wager Contracting contends that its cross motions are timely, as they involve nearing identical issues to those raised in prior motions.

-17-

DISCUSSION/ANALYSIS

1. The plaintiffs' motion for partial summary judgment against the District on their Labor Law § 240 (1) cause of action is granted and the branch of Pelham's motion which is for summary judgment dismissing that cause of action is denied.

The plaintiffs met their prima facie burden for partial summary judgment on the issue of liability against the District on their cause of action pursuant to Labor Law § 240 (1) (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

"Labor Law § 240 (1) imposes absolute liability on owners, contractors and agents for their failure to provide workers with safety devices that properly protect against elevation-related special hazards. Breach of the statutory duty must be the proximate cause of the injury. The statute is to be interpreted liberally to accomplish its purpose" (*Striegel v Hillcrest Hgts. Dev. Corp.*, 100 NY2d 974, 977 [2003]; *see Ortiz v 164 Atlantic Avenue, LLC*, 77 AD3d 807, 808 [2d Dept 2010]). "In order to prevail on a Labor Law § 240 (1) claim, the plaintiff must establish a violation of the statute and that the violation was a proximate cause of his or her injuries" (*Ortiz v 164 Atlantic Avenue, LLC*, 77 AD3d at 809). However, "[w]here there is no statutory violation, or where the plaintiff is the sole proximate cause of his or her own injuries, there can be no recovery under Labor Law § 240 (1)" (*Treu v Cappelletti*, 71 AD3d 994, 997 [2d Dept 2010], citing *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]; *Melchor v Singh*, 90 AD3d 866, 867 [2d Dept 2011] ["Where a violation of Labor Law § 240 (1) is a proximate cause of an accident, the plaintiff's conduct, of necessity, cannot be deemed the sole proximate cause . . . . Conversely, if the plaintiff is solely to blame for the injury, it necessarily means that there has been no statutory violation" (internal citations omitted)]).

Here, the plaintiffs established, as a matter of law, that the District violated its nondelegable duty pursuant to Labor Law § 240 (1) to furnish Wager with safety devices, such as shoring or bracing, which would have afforded him proper protection from elevation-based hazards, and that such violation was a proximate cause of his accident (*see Godoy v Neighborhood Partnership Hous. Dev. Fund Co., Inc.*, 104 AD3d 646, 647-648 [2d Dept 2013] [" the plaintiff demonstrated, prima facie, her entitlement to judgment as a matter of law on the issue of liability pursuant to Labor Law § 240 (1) by submitting evidence that the floor where her accident occurred was unstable and that she was not provided with any safety devices despite the potential elevation risks involved"]; *Taylor v V.A.W. of America, Inc.*, 276 AD2d 621, 621-622 [2d Dept 2000] [where "[the plaintiff] fell through the roof, approximately 25 to 30 feet down, into a concrete silo . . . [he] established a prima facie violation of Labor Law § 240 (1)"]; *Richardson v Matarese*, 206 AD2d 353, 353-354 [2d Dept 1994] ["The collapse of the floor constituted a prima facie violation of Labor Law § 240 (1)"]).

In opposition, the District failed to raise a triable issue of fact as to the existence of a violation or whether the plaintiff was the sole proximate cause of his accident (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). The District's contention that the plaintiff was the sole proximate cause of his accident because he was supervising and directing the demolition workers

-18-

is without merit. Although the defendants' experts opine that the accident would not have occurred had Wager Contracting's employees, under the direction of the plaintiff, performed the demolition in a difference sequence, the fact that the plaintiff himself supervised the work does not vitiate the existence of a statutory violation, as the duty imposed by Labor Law § 240 (1) is *nondelegable*. Notably, "[w]here, as here, a violation of Labor Law § 240 (1) is a proximate cause of an accident, the plaintiff's conduct cannot be deemed solely to blame for it" (*Zou v Hai Ming Constr. Corp.*, 74 AD3d 800, 801 [2d Dept 2010]). Moreover, the circumstances presented here do not support the existence of the "recalcitrant worker" defense to defeat the plaintiffs' Labor Law 240 (1) claim (*cf. Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004] ["[A] jury could have found that plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured," which "factual findings would lead to the conclusion that defendant has no liability under Labor Law § 240 (1)"]).

Further, the District's contention that Labor Law § 240 (1) is inapplicable because the roof of the Colonial School was the target of the demolition is without merit, as it is undisputed that, at the time of the accident, Wager Contracting was not intending to bring down the entire roof of the building (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 11 [2011] ["the pipes that caused plaintiff's injuries were not slated for demolition at the time of the accident. This stands in contrast to cases where the objects that injured the plaintiffs were themselves the target of demolition when they fell"]).

Additionally, for the foregoing reasons, the branch of the District's motion which is for summary judgment dismissing the plaintiffs' Labor Law § 240 (1) cause of action is denied.

2. The branch of the District's motion which is for summary judgment dismissing the Labor Law § 241 (6) cause of action is denied.

"Labor Law § 241 (6) imposes upon owners and general contractors, and their agents, a nondelegable duty to provide reasonable and adequate protection and safety for workers, and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Norero v 99-105 Third Ave. Realty, LLC*, 96 AD3d at 728, citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 878 [1993]). "To prevail on a cause of action alleging a violation of Labor Law § 241 (6), a plaintiff must establish the violation of an Industrial Code provision that sets forth specific, applicable safety standards" (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 503-505 [1993]). "[O]nce it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 350 [1998]). "If proven, the general contractor (or owner, as the case may be) is vicariously liable without regard to his or her fault" and *"irrespective of its ability to direct, control or supervise* the construction site or the activity connected therewith" or whether it had "actual or constructive notice sufficient to prevent or cure" any hazardous worksite activity or condition (*id.* at 350, 351-352).

Here, the District failed to meet its prima facie burden for summary judgment dismissing the plaintiffs' cause of action pursuant to Labor Law § 241 (6), as it failed to eliminate triable issues of fact as to whether a violation of 12 NYCRR 23-3.3 (c) proximately caused his injuries (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 12-13 [2011]). That provision of the Industrial Code provides:

> During hand demolition operations, continuing inspections shall be made by designated persons as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means

(12 NYCRR 23-3.3). "The thrust of [12 NYCRR 23-3.3] is to fashion a safeguard, in the form of 'continuing inspections,' against hazards which are created by the progress of the demolition work itself" (*Monroe v New York*, 67 AD2d 89, 100 [2d Dept 1979]; *see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d at 12). Here, the District failed to establish that the regulation does not apply or, in the alternative, that compliance with the regulation would not have prevented the accident (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d at 12-13 ["defendants failed to meet their burden of showing either that they complied with the regulation or that their noncompliance did not cause plaintiff's accident. Thus, we conclude that the courts below properly denied summary judgment to defendants on plaintiff's Labor Law § 241 (6) claims"]).

### 3. The branch of the District's motion which is for summary judgment dismissing the plaintiffs' Labor Law § 200 cause of action is granted.

"Labor Law § 200 is a codification of the common-law duty of an owner or general contractor to provide workers with a safe place to work" (*Ortega v Liberty Holdings*, LLC, 111 AD3d at 906; *see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). There are "two broad categories under which liability may be imposed under Labor Law § 200" (*Slikas v Cyclone Realty, LLC*, 78 AD3d 144, 147 [2d Dept 2010]). One category of liability relates to negligence arising from the means, methods, and materials employed in the work: "[W]hen a claim arises out of alleged defects or dangers in the methods or materials of the work, recovery against the owner or general contractor cannot be had under Labor Law § 200 unless it is shown that the party to be charged had the authority to supervise or control the performance of the work" (*Ortega v Puccia*, 57 AD3d 54, 61 [2d Dept 2008]; *see Comes v N.Y. State Elec. & Gas Corp.*, 82 NY2d 876 [1993] [liability may not be imposed pursuant to Labor Law § 200 "solely because the owner had notice of the allegedly unsafe manner in which the work was performed"]; *Singh v Black Diamonds LLC*, 24 AD3d 138 [1st Dept 2005] ["liability can only be imposed if defendant exercised control or supervision over the work and had actual or constructive notice of the purportedly unsafe condition"]). Second, liability may also be imposed where the injury is proximately caused by a dangerous or defective condition in the property itself: "Where a plaintiff's injuries stem not from the manner in which the work was being performed, but, rather, from a dangerous condition on the premises, a contractor may be liable in common-law negligence and under Labor Law § 200 only if it had control over the work site and either created the dangerous condition or had actual or

-20-

constructive notice of it" (*Sotomayer v Metropolitan Transp. Auth.*, 92 AD3d 862, 864 [2d Dept 2012]).

As an initial matter, under the circumstances of this case, where it is virtually undisputed that the building collapsed because of improper sequencing of the demolition and/or the failure to employ shoring and bracing during the demolition process, the Court finds that the plaintiff's injuries arose from the means and methods employed in the demolition and not because of a dangerous premises condition (*see e.g. Ortega v Puccia*, 57 AD3d 54, 62 [2d Dept 2008] ["In this case, the plaintiff's accident did not involve any dangerous or defective condition on the defendants' premises. The accident instead involved the manner in which the plaintiff performed his work"]).

Further, the District met its prima facie burden for summary judgment dismissing the plaintiffs' Labor Law § 200 cause of action insofar as asserted against it by establishing that it did not exercise supervision or control over the means or methods involved in the demolition (*see Gallagher v Resnick*, 107 AD3d 942, 945 [2d Dept 2013] ["To be held liable pursuant to Labor Law § 200 in a case such as this, where the claim arises out of the methods or means of the work, a defendant must have authority to supervise or control the work"]; *see Ramos v Champion Combustion, Inc.*, 12 AD3d 227 [1ˢᵗ Dept 2004] ["Plaintiff's common-law negligence and Labor Law § 200 claims were properly dismissed as Champion did not exercise supervisory control over the work in the course of which plaintiff was injured"]) and, in opposition, the plaintiffs failed to raise a triable issue of fact (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

4. The branch of Anastos Engineering's motion which is for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them is granted.

Anastos Engineering met its prima facie burden for summary judgment dismissing the plaintiffs' Labor Law §§ 240 (1) and 241 (6) causes of action, as it established that it was engaged in its capacity as a professional engineering firm and that it did not direct or control the work on the Colonial School other than its involvement in the planning and design of the school expansion (*see* Labor Law § 240 [1] ["No liability pursuant to this subdivision for the failure to provide protection to a person so employed shall be imposed on professional engineers as provided for in article one hundred forty-five of the education law . . . who do not direct or control the work for activities other than planning and design"]; Labor Law § 241 (9) ["No liability for the non-compliance with any of the provisions of this section shall be imposed on professional engineers as provided for in article one hundred forty-five of the education law . . . who do not direct or control the work for activities other than planning and design"]; *see also Ferreira v City of New York*, 85 AD3d 1103, 1105 [2d Dept 2011]).

Further, Anastos Engineering met its prima facie burden for summary judgment dismissing the plaintiffs' Labor Law § 200 cause of action by establishing that it did not direct or control the means or methods of the demolition. In opposition, the plaintiffs failed to raise a triable issue of fact (*see Prado v Sidney B. Bowne & Sons*, 207 AD2d 875, 876 [2d Dept 1994] ["The plaintiff came forward with no evidence indicating that Bowne controlled the manner in which the work was carried out, that Bowne committed any affirmative act of negligence, or that the agreement between

-21-

Bowne and the village imposed a duty upon Bowne to ensure the plaintiff's safety"]; *see also Brooks v A. Gatty Service Co.*, 127 AD2d 553, 554 [2d Dept 1987] ["It is well settled in New York that liability may not be imposed upon an engineer, who is engaged to assure compliance with construction plans and specifications, for an injury sustained by a worker, unless the engineer commits an affirmative act of negligence or such liability is imposed by a clear contractual provision"]).

5. Firneis is granted summary judgment dismissing the complaint and all cross-claims insofar as asserted against him.

The branch of Savin Engineers' and Firneis' motion which is for summary judgment dismissing all claims and cross-claims insofar as asserted against Firneis is granted, since he neither acted as the District's agent or contractor for purposes of liability pursuant to Labor Law §§ 240 (1) and 241 (6), nor supervised or controlled the means or methods of the demolition, and all of his dealings with the project were in his capacity as an employee of Savin Engineers (*see Youseff v Malik*, 112 AD3d 617, 618-619 [2d Dept 2013] ["In addition, the Supreme Court properly concluded that Abbas was entitled to summary judgment dismissing the complaint insofar as asserted against him. Contrary to the plaintiffs' contention, Abbas did not act as Robina's agent or contractor pursuant to Labor Law § 240 (1). The record reflects that Robina entered into a construction contract with KES, and that, to the extent that Abbas played a supervisory role in the construction project, he acted in his capacity as a KES officer, rather than in his individual capacity"]).

6. The branch of Savin Engineers' motion which is for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it is denied.

Labor Law §§ 240 (1) and 241 (6) impose nondelegable duties upon owners, contractors, and their agents to furnish safety devices and adequate protection to workers engaged in certain types of work (*see Ortega v Liberty Holdings, LLC*, 111 AD3d 904, 906 [2d Dept 2013]). "When the work giving rise to these duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor" (*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 318 [1981]; *see Walls v Turner Constr. Co.*, 4 NY3d 861, 863-864 [2005] ["one may be vicariously liable as an agent of the property owner for injuries sustained under the statute in an instance where the manager had the ability to control the activity which brought about the injury"]; *Delahaye v Saint Anns School*, 40 AD3d 679, 683 [2d Dept 2007]). In determining whether a defendant is a statutory agent under the Labor Law, the defendant's contractual title is not dispositive; rather, the inquiry focuses on whether the defendant "had the ability to control the activity which brought about the injury" (*Walls v Turner Constr. Co.*, 4 NY3d at 864).

"Although a construction manager is generally not considered a contractor responsible for the safety of the workers at a construction site pursuant to Labor Law §§ 200 and 241 (6), it may nonetheless become responsible if it has been delegated the authority and duties of a general contractor, or if it functions as an agent of the owner of the premise" (*Rodriguez v JMB Architecture, LLC*, 82 AD3d 949, 950 [2d Dept 2011]).

-22-

Here, although Savin Engineers was the District's agent on the site for limited purposes, including monitoring the project for conformity with the plans and keeping records of the daily activities on site, viewing the record in the light most favorable to the plaintiffs, the proof is insufficient to establish that Savin Engineers' duties and activities at the site rose to the level of becoming a statutory agent of the owner or general contractor (*see Russin v Louis N. Picciano & Son*, 54 NY2d at 318; *Delahaye v Saint Anns School*, 40 AD3d at 683 ["The record demonstrates that the role of Builders Group was only one of general supervision, which is insufficient to impose liability under Labor Law § 240 (1) and § 241 (6)"]; *Rodriguez v JMB Architecture, LLC*, 82 AD3d at 951 ["The role of JMB was only one of general supervision, which is insufficient to impose liability under the Labor Law"]). Notably, all decision-making regarding the means and methods of the construction was contractually assigned to Wager Contracting (*see Rodriguez v JMB Architecture, LLC*, 82 AD3d at 951 ["Paragraph 2.3.15 of the agreement between JMB and the Direnzos provided that 'the Construction Manager shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are solely the Contractor's responsibility'"]). Accordingly, the degree of control and supervision over the project that was assigned to Savin Engineers in this case is insufficient to impose liability on it pursuant to Labor Law §§ 240 and 241 (6) (*see Delahaye v Saint Anns School*, 40 AD3d 679, 683 [2d Dept 2007]).

Further, Savin Engineering met its prima facie burden for summary judgment dismissing the plaintiffs' Labor Law § 200 cause of action, by establishing that it did not direct or control the means or methods of the demolition (*see e.g. Prado v Sidney B. Bowne & Sons*, 207 AD2d 875, 876 [2d Dept 1994]).

In opposition, the plaintiffs failed to raise a triable issue of fact (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

7. The branch of Gisolfi Associates' motion which is for summary judgment dismissing the Labor Law causes of action insofar as asserted against it is granted; however, the branch of Gisolfi Associates' motion which is for summary judgment dismissing the negligence cause of action against it is denied.

As conceded by the plaintiffs, the causes of action pursuant to Labor Law §§ 240 (1), 241 (6), and 200 should be dismissed insofar as asserted against Gisolfi Associates. However, the Court finds that, under the circumstances, there is an issue of fact under one narrow theory of liability against Gisolfi Associates relating to the mislabeling of a wythe brick wall as veneer on its demolition drawings.

As a general rule, the "breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor" (*Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]). However, the Court of Appeals has recognized three exceptions to this general rule: "a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be potentially liable in tort—to third persons: (1) where the contracting party,

-23-

in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm ; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]).

As an initial matter, the Court finds that the plaintiffs' claim that Gisolfi Associates was negligent in failing to turn over Drawing 502 to Wager Contracting cannot form the basis of liability against Gisolfi Associates. With respect to the first *Espinal* exception, the failure to turn over Drawing 502 did not affirmatively launch a force or instrument of harm and, at most, constituted a failure to become "an instrument for good," which is insufficient to impose liability on Gisolfi Associates (*see Altinma v East 72nd Garage Corp.*, 54 AD3d 978, 980 [2d Dept 2008] ["a finding that Ace merely may have failed to become 'an instrument for good,' which is insufficient to impose a duty of care upon a party not in privity of contract with the injured party"], citing *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]). Moreover, with respect to the second *Espinal* exception, the plaintiffs have failed to identify a duty on the part of Gisolfi Associates to turn over this drawing and, with respect to the third *Espinal* exception, Gisolfi Associates did not entirely displace the other entities' duties to determine the load-bearing capacity of the structure (*see Espinal v Melville Snow Contrs.*, 98 NY2d at 140-142).

However, the plaintiffs' claim that Gisolfi Associates negligently mislabeled the brick wythe as veneer falls within the first Espinal exception, in that the affirmative mislabeling of the wall effectively launched a force or instrument of harm that proximately caused the plaintiff's injury. In contrast to *492 Kings Realty, LLC v 506 Kings, LLC*, 105 AD3d 991, 994 [2d Dept 2013]), where an architect's detail in a drawing was intended simply to alert the contractor to the need for underpinning in the construction of a new building and the drawing was "was clearly not intended to be utilized as a construction drawing" (*id.* at 994), here, Gisolfi Associates' architectural drawings of the portion of Colonial School slated for demolition were intended to be used by the contractor in connection with the demolition. Moreover, contrary to *492 Kings Realty, LLC*, where the contractor "did not rely upon [the architect's] drawings in connection with the underpinning" (*id.*), Gregory Wager testified that Wager Contracting relied upon drawing A-051's labeling of the brick wall as veneer during the demolition.

Although Gisolfi Associates met it prima facie burden for summary judgment dismissing this theory of liability through the affidavit of its expert Burton L. Roslyn, who opined that the dismantling of the outer layer of brick wythe did not contribute in any way to the happening of the accident, in opposition, the plaintiffs raised a triable issue of fact through the affidavit of their expert, Robert J. O'Connor, P.E., who opined that the removal of the brick wythe weakened the stability of the overall structure and contributed to the accident (*see Stukas v Streiter*, 83 AD3d 18, 24 [2d Dept 2011] ["to defeat summary judgment, the nonmoving party need only raise a triable issue of fact with respect to the element of the cause of action or theory of nonliability that is the subject of the moving party's prima facie showing"]). This proof, coupled with Gregory Wager's testimony that Wager Contracting relied upon the mislabeled drawing, is sufficient to raise a triable issue of fact.

Finally, the Court cannot determine from this record, as a matter of law, that Wager

-24-

Contracting's act of cutting the steel reinforcing beams was a superceding cause of the accident, relieving Gisolfi of liability (*see Adams v Lemberg Enters., Inc.*, 44 AD3d 694, 695 [2d Dept 2007] ["Generally, issues of proximate cause are for the fact finder to resolve"]; *see also Gray v Amerada Hess Corp.*, 48 AD3d 747, 748 [2d Dept 2008] [" we cannot say, as a matter of law, that the accident was unforeseeable or that the unknown driver's intervening act of negligence was of such an extraordinary nature or so attenuated the appellants' possible negligence from the ultimate injuries as to be deemed a superseding cause necessarily relieving the appellant of liability" (internal citations and quotation marks omitted)]).

8. NYCHHC's motion for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it is denied.

NYCHHC met its prima facie burden for summary judgment by submitting, among other things, the expert affirmations of Dr. Douglas S. Cohen and Dr. Ian H. Newmark, who opine that the care and treatment rendered to the plaintiff at JMC did not depart from accepted medical practice and, in the alternative, that any departure was not a proximate cause of the plaintiff's injures (*see Matos v Khan*, 119 AD3d 909, 910 [2d Dept 2014] ["In an action sounding in medical malpractice, a defendant moving for summary judgment must make a prima facie showing either that there was no departure from accepted medical practice, or that any departure was not a proximate cause of the patient's injuries"]).

However, in opposition, the plaintiffs raised triable issues of fact through the affirmation of their expert, Dr. Lawrence Shields, who opines that JMC departed from the standard of care in connection with the dislodgment of the tracheal tube during the MRI and in delaying reintubation, which proximately caused the plaintiff's injuries (*see Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C.*, 132 AD3d 959 [2d Dept 2015] ["the plaintiff's expert opined . . . that the delay in her treatment was a departure from accepted medical practice, and such departure was a proximate cause of the plaintiff's injuries"]).

9. All cross-claims and third-party claims are dismissed insofar as asserted against Anastos Engineering, Savin Engineers, and Firneis.

Additionally, Anastos Engineering, Savin Engineers, and Firneis are entitled to summary judgment dismissing all cross-claims and third-party claims for indemnification and contribution insofar as asserted against them, as they established, prima facie, that they were free from negligence and did not have the authority to supervise, direct, or control the work giving rise to the injury (*see Karanikolas v Elias Taverna, LLC*, 120 AD3d 552, 556 [2d Dept 2014]).

10. The motion of Savin Engineers and Firneis, and the separate motion of the District for summary judgment on their cross-claims/third-party claims for common law and contractual indemnification from Wager Contracting are denied, and Wager Contracting's cross motions are granted in part.

While Wager Contracting's cross motions were made beyond the Court's extension for filing summary judgment motions and, therefore, were untimely, "an untimely motion or cross motion for

summary judgment may be considered by the court where . . . a timely motion for summary judgment was made on nearly identical grounds" (*see Grande v Peteroy*, 39 AD3d 590, 591-592 [2d Dept 2007]). Here, the issues raised in Wager Contracting's cross motions are nearly identical to issues raised in Savin Engineers, Firneis, and Wager Contracting's motions relating to indemnification (*see Homeland Ins. Co. of N.Y. v National Grange Mut. Ins. Co.*, 84 AD3d 737, 738 [2d Dept 2011] [cross motion asserting that indemnification claims were barred by antisubrogation rule was properly considered despite its untimeliness]).

With respect to Savin Engineers' and Firneis' claims for indemnification, the Court notes all causes of action and cross-claims asserted against them have been dismissed, and Wager Contracting's carrier has provided Savin Engineers and Firneis with a defense. Since Savin Engineers and Firneis have not established that they have incurred damages in excess of the policy limits, the antisubrogation rule requires that their motion for summary judgment on their cross-claims against Wager Contracting for common-law and contractual indemnification be denied (*see e.g. Lodovichetti v Baez*, 31 AD3d 718, 719 [2d Dept 2006] ["the Supreme Court properly permitted the defendants Wheels, Inc., Schering-Plough Corporation, and Schering Sales Corporation to maintain their cross-claim against the defendant Raul Baez, their co-insured, for damages to the extent that such damages exceeded the policy limits of $ 2 million, by denying that branch of his motion which was for summary judgment dismissing their cross-claims for damages against him to the extent that such damages exceeded the limits of the applicable insurance policy"]). Further, under these circumstances, Wager Contracting's cross motion for summary judgment dismissing Savin Engineers and Fineis' cross-claims for indemnification insofar as asserted against it must be granted, but only to the extent of the policy limits.

Additionally, Wager Contracting is entitled to summary judgment dismissing so much of the District's third-party cause of action as seeks indemnification for sums up to the limits of the policy insuring both Wager Contracting and the District. Moreover, while the District's claims for indemnification beyond the limits of Wager Contracting's policy are not barred, an award of summary judgment on the District's third-party claims for indemnification would be premature at this time (*see Porter v Annabi*, 65 AD3d 1322 [2d Dept 2009] ["While claims for indemnification beyond the limits of the policy would not be barred, the Supreme Court also properly determined that a conditional judgment of indemnification would be premature at this juncture" (citations omitted)]).

Based upon the foregoing, it is hereby,

ORDERED that the plaintiffs' motion for partial summary judgment on their cause of action pursuant to Labor Law § 240 (1) is granted; and it is further

ORDERED that the branches of the motion of Pelham Union Free School District which are for summary judgment dismissing the plaintiffs' Labor Law §§ 240 (1) and 241 (6) causes of action insofar as asserted against it, and for summary judgment on its third-party claims against Wager Contracting Co., Inc., are denied, and the branches of the motion which are for summary judgment dismissing the plaintiffs' Labor Law § 200 and negligence causes of action insofar as asserted against it are granted; and it is further

-26-

ORDERED that the motion of Anastos Engineering Associates for summary judgment dismissing the complaint and all cross claims insofar as asserted against it is granted; and it is further

ORDERED that the branches of the motion of Savin Engineers, P.C., and Robert Firncis for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them are granted, and the branch of their motion which is for summary judgment on their third-party claims for indemnification from Wager Contracting Co., Inc., is denied; and it is further

ORDERED that the branches of the motion of Peter Gisolfi Associates, Architects, Landscape Architecture, LLP (s/h/a Peter Gisolfi Associates, Architecture, Landscape Architecture, LLP) which are for summary judgment dismissing the plaintiffs's Labor Law §§ 240 (1), 241 (6), and 200 causes of action are granted, and the branches of the motion which are for summary judgment dismissing the plaintiffs' negligence cause of action (as narrowed by this Decision and Order to the plaintiffs' claim that Gisolfi Associates negligently mislabeled a demolition drawing) and all cross-claims and third-party claims insofar as asserted against it are denied; and it is further

ORDERED that the motion of New York City Health and Hospitals Corporation for summary judgment dismissing the complaint and all cross-claims insofar as asserted against it is denied; and it is further

ORDERED that Wager Contracting's cross motions for summary judgment are granted to the extent of dismissing the cross-claims and third-party claims of Savin Engineers, P.C., Robert Firncis, and Pelham Union Free School District to the extent those parties seek indemnification within the limits of Wager Contracting's insurance policy; and it is further

ORDERED that all parties appear in the Settlement Conference Part on February 23, 2016 at 9:15 a.m., in room 1600 of the Westchester County Courthouse located at 111 Dr. Martin Luther King, Jr., Boulevard, White Plains, New York, 10601; and it is further

ORDERED that all other relief requested and not decided herein is denied.

This constitutes the decision and order of the Court.

Dated: White Plains, New York
     January 11, 2016

_____ E. Connell _____
HON. FRANCESCA E. CONNOLLY, J.S.C.

TO:    Kramer, Dillof, Livingston & Moore
       Attorneys for the plaintiffs
       217 Broadway, 10th Floor
       New York, NY 10007
       By NYSCEF

Armienti, De Bellis, Guglielmo & Rhoden, LLP
Attorneys for Pelham Union Free School District.
170 Old Country Road, Suite 607
Mineola, NY 11501
By NYSCEF

Rawle & Henderson, LLP
Attorneys for the Savin Engineers, P.C. and Robert Firneis
14 Wall Street, 27th Floor
New York, NY 10005
By NYSCEF

DeCorato Cohen Sheehen & Federico, LLP
Attorneys for New York City Health & Hospitals Corporation
810 7th Avenue, 41st Floor
New York, NY 10019

Babchik & Young, LLP
Attorneys for Peter Gisolfi Associates, Architects, Landscape Architecture, LLP
245 Main Street, Suite 330
White Plains, NY 10601
By NYSCEF

Byrne & O'Neill, LLP
Attorneys for Anastos Engineering Associates
11 Broadway, Room 910
New York, NY 10004
By NYSCEF

Fabiani Cohen & Hall, LLP
Attorneys for Wager Contracting Co., Inc.
570 Lexington Avenue
New York, NY 10022
By NYSCEF

-28-

# ▓AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor
*where the basis of payment is a STIPULATED SUM*

AGREEMENT made as of the  Fourth    day of  September
in the year of  Two Thousand Nine
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*

Pelham Union Free School District
18 Franklin Place
Pelham, NY 10803

and the Contractor:
*(Name, address and other information)*

Wager Contracting Co., Inc.
30 Pleasant Street
New Rochelle, NY 10801

The Project is:
*(Name and location)*

Contract No. 1 – General Construction & Site Work

Colonial Elementary School
315 Highbrook Avenue
Pelham, NY 10803

The Architect is:
*(Name, address and other information)*

Peter Gisolfi Associates
566 Warburton Avenue
Hastings-On-Hudson, NY 10706

The Owner and Contractor agree as follows.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

DEFENDANT'S
EXHIBIT NO. C
FOR IDENTIFICATION
DATE: 4/12/13    RPTR: 02

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. Purchasers are permitted to reproduce ten (10) copies of this document when completed. To report copyright violations of AIA Contract Documents, e-mail The American Institute of Architects' legal counsel, copyright@aia.org.

1

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**3.13    USE OF SITE**

3.13.1    The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**3.14    CUTTING AND PATCHING**

3.14.1    The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

3.14.2    The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

**3.15    CLEANING UP**

3.15.1    The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

3.15.2    If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

**3.16    ACCESS TO WORK**

3.16.1    The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

**3.17    ROYALTIES, PATENTS AND COPYRIGHTS**

3.17.1    The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**3.18    INDEMNIFICATION**

3.18.1    To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be



©1997    AIA®
AIA DOCUMENT A201-1997
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C.  20006-5292

17

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.