UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ACE AMERICAN INSURANCE COMPANY,   Case No. 16-cv-8773

                Plaintiff,

    -against-

AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY,

                Defendant.
---------------------------------------------------------------X

## RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1(b), American Guarantee & Liability Insurance Company ("American Guarantee"), through counsel, respectfully files the following response to Plaintiff's, ACE American Insurance Company, Rule 56.1 Statement:

**Agreement Between Pelham and Wager Contracting**

1. Pelham Union Free School District ("Pelham") entered into a written contract with Wager Contracting in or about September 2009 for the performance of work at a school building owned by Pelham. Affidavit of Kevin J. Fee, sworn to May 19, 2017, Exhibit ("Ex.") E (AGLIC Response to Notice to Admit) Response No. 4.

**RESPONSE:** Admitted.

2. Wager Contracting's written contract with Pelham obligated Wager Contracting to indemnify Pelham for Wager Contracting's own negligence and further obligated Wager Contracting to purchase $1 million in primary general liability insurance and $5 million in excess insurance insuring Wager Contracting and naming Pelham and the project architect Peter Gisolfi

Associates ("Gisolfi") as additional insureds on both policies. Ex. E (AGLIC Response to Notice to Admit) Response No. 5.

**RESPONSE:** Admitted.

**Pelham's Insurance Coverage of Pelham and Wager Contracting**

*The NGM Primary Policy*

3.     Wager Contracting, through its trade group IRF Construction Group, Inc. c/o Preferred Concepts, Inc., complied with its obligations under the written contract with Pelham to obtain $1 million in primary general liability policy naming Pelham as an additional insured when it purchased a $1 million primary general liability policy from NGM Insurance Company (the "NGM Primary Policy") that was in force on October 31, 2009. Ex. K (February 9, 2016 Adam Smith letter to Wager) at 2 (AGLIC000390); Ex. A to Ex. D (NGM Policy) at ACE0006638-79.

**RESPONSE:** Admitted.

4.     The Additional Insured-Designated Person or Organization endorsement to the NGM Primary Policy amended the definition of "WHO IS AN INSURED" "... to include the person or organization shown in the Schedule [referring to the Additional Insured Schedule] as an insured but only with respect to the liability arising out of your operations or premises owned by or rented to you." Ex. E (AGLIC Response to Notice to Admit) Response No. 13; Ex. B (Compl.), ¶ 11; Ex. C (Answer), ¶ 11; Ex. A to Ex. D (NGM Policy) at ACE0006665.

**RESPONSE:** Admitted.

5.     Both Pelham and Gisolfi were listed on the Additional Insured Schedule to the NGM Primary Policy. Ex. E (AGLIC Response to Notice to Admit) Response No. 11; Ex. K

(Adam Smith February 9, 2016 letter to Wager) at 3 (AGLIC000391); Ex. A to Ex. D, (NGM Policy, Additional Insured Schedule) at ACE0006662.

**RESPONSE:** Admitted.

6.     The NGM Primary Policy provides that: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Ex. A to Ex. D, (NGM Primary Policy, Commercial General Liability Coverage Form, Section I – COVERAGES, COVERAGE A. 1.a at page 1 of 12) at ACE0006685.

**RESPONSE:** Admitted

7.     The NGM Primary Policy excludes from coverage Workers' Compensation And Similar Laws and Employer's Liability unless liability is assumed by contract. Ex. B (Compl.), ¶ 20; Ex. C (Answer), ¶ 20; Ex. A to Ex. D (NGM Primary Policy, Commercial General Liability Coverage Form, at page 2 of 12) at ACE0006686.

**RESPONSE:** Denied as stated but American Guarantee admits that the NGM Primary Policy excludes from coverage claims alleging bodily injury falling within the Workers' Compensation and Similar Laws and Employer's Liability exclusions and that the Employer's Liability exclusion contains an exception for liability assumed under an insured contract.

8.     The NGM Primary Policy precludes coverage for bodily injury to: "(1) [a]n 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the Insured's business." Ex. B (Compl.), ¶ 20; Ex. C (Answer), ¶ 20; Ex. A to Ex. D (NGM Primary Policy, Commercial General Liability Coverage Form at page 2 of 12) at ACE0006686.

**RESPONSE:** Denied as stated but American Guarantee admits that this exclusion precludes coverage unless liability is assumed under an insured contract.

9. The NGM Primary Policy's exclusion of coverage for bodily injury further provides that it "applies: (1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any other obligation to share damages with or repay someone else who must pay damages because of injury." Ex. B (Compl.), ¶ 20); Ex. C (Answer), ¶ 20; Ex. A to Ex. D (NGM Primary Policy, Commercial General Liability Coverage Form at page 2 of 12) at ACE0006686.

**RESPONSE:** Admitted.

10. The NGM Primary Policy's exclusion of coverage for bodily injury provides that **"[t]his exclusion does not apply to liability assumed by the insured under an 'insured contract**.'" (Emphasis added). Ex. B (Compl.), ¶ 20; Ex. C (Answer), ¶ 20; Ex. A to Ex. D (NGM Primary Policy, Commercial General Liability Coverage Form at page 2 of 12) at ACE0006686.

**RESPONSE:** Admitted.

11. The definition of "insured contract" in the NGM Primary Policy states, in pertinent part: "9.f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person. . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Ex. B (Compl.), ¶ 21; Ex. C (Answer), ¶ 21; Ex. A to Ex. D (NGM Primary Policy, Commercial General Liability Coverage Form at 10 of 12) at ACE0006694.

**RESPONSE:** Admitted.

12. The contract between Pelham and Wager Contracting meets the definition of an "insured contract" under the NGM Primary Policy. Ex. B (Compl.), ¶ 21; Ex. C (Answer), ¶ 21.

*The AGLIC Excess Policy*

**RESPONSE:** Admitted.

13. Wager Contracting complied with its obligation under its contract with Pelham to obtain $5 million in excess coverage that named Pelham as an additional insured when it purchased the $5 million Excess Policy, No. AUC5327456-05 (the "AGLIC Excess Policy") issued by Defendant American Guarantee & Liability Insurance Company ("AGLIC"). Ex. E (AGLIC Response to Notice to Admit) Response Nos. 9-10; Ex. B to Ex. D (AGLIC Policy, Certificate of Insurance) at p. 2 of 57 of 12/14/16 ECF filing.

**RESPONSE:** Admitted.

14. The AGLIC Excess Policy provided follow form liability coverage to the NGM Primary Policy as follows:

> Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of **underlying insurance** are made a part of this policy, except with respect to:
>
> 1. Any contrary provision contained in this policy; or
>
> 2. Any provision in this policy for which a similar provision is not contained in **underlying insurance**.
>
> With respect to the exceptions stated above, the provisions of this policy will apply.
>
> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then **Coverage A** does not apply to such damages.

Ex. B to Ex. D (AGLIC Excess Policy, Commercial Umbrella Liability Policy at page 1 of 15) at p. 35 of 57 of 12/14/16 ECF filing (emphasis in original).

**RESPONSE:** Admitted that ACE has accurately quoted to sections of Coverage A of the AGLIC Policy.

15. "**Underlying insurance** means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy." Ex. B of Ex. D (AGLIC Excess Policy, Commercial Umbrella Liability Policy at page 9 of 15) at p. 43 of 57 of 12/14/16 ECF filing.

**RESPONSE:** Admitted.

16. The NGM Primary Policy is listed on the AGLIC Excess Policy's Schedule of Underlying Insurance. Ex. E (AGLIC Response to Notice to Admit) Response No. 14; Ex. B. to Ex. D (AGLIC Excess Policy's Schedule of Underlying Insurance) at p. 4 of 57 of 12/14/16 ECF filing.

**RESPONSE:** Admitted.

17. AGLIC issued a Certificate of Insurance identifying Wager Contracting as a Participant/Named Insured under the AGLIC Excess Policy for the policy period that included October 31, 2009. Ex. B (Compl.), ¶ 22; Ex. C (Answer), ¶ 22; Ex. B to Ex. D (AGLIC Policy) at p. 2 of 57 of 12/14/16 ECF filing; Ex. D to Ex. D (Certificate of Insurance).

**RESPONSE:** Admitted.

18. In a February 9, 2016 letter to Pelham, AGLIC acknowledged that "[b]ecause the AGLIC [Excess] Policy follows form to the NGM [Primary] Policy and Pelham is identified in the Schedule of Additional Insureds, Pelham likewise qualifies as an additional insured under the AGLIC [Excess] Policy for the Wager Action." Ex. E (AGLIC Response to Notice to Admit) Response Nos. 15-16; Ex. B (Compl.), ¶ 12; Ex. C (Answer), ¶ 12; Ex. C to Ex. D (Feb. 9, 2016 Letter from Adam Smith to Pelham) at 4.

**RESPONSE:** Admitted.

19.     The AGLIC Excess Policy provides that "If **other insurance** applies to damages that are also covered by this policy, this policy will apply in excess of the **other insurance**." Ex. B to Ex. D (AGLIC Policy, Commercial Umbrella Liability Policy at page 14 of 15, Section VI.A.11) at p. 48 of 57 of 12/14/16 ECF filing (emphasis in original).

**RESPONSE:** Admitted.

20.     The AGLIC Excess Policy defines **other insurance** as "a policy of insurance providing coverage that this policy also provides." Ex. B to Ex. D (AGLIC Policy, Commercial Umbrella Liability Policy at page 9 of 15, Section V.A.4) at p. 43 of 57 of 12/14/16 ECF filing (emphasis in original).

**RESPONSE:** Admitted that ACE has quoted to a section of the other insurance definition in the AGLIC Policy.

*The ACE Excess WC/EL Policy*

21.     At all times relevant to Mr. Wager's injury, the Special Trades Contracting and Construction Trust ("Special Trades") was a group self-insurance program authorized by the New York Workers' Compensation Law. Ex. H (Report of Group Self-Insurers, As of 5/01/2017) at 10.

**RESPONSE:** Admitted.

22.     At all relevant times, Special Trades had retained a number of third party claims administrators ("TPAs"), the last of which was SAFE LLC, to handle the administration of claims, and to pay the required benefits and losses, if any, due to injured employees of the participants of Special Trades. Ex. S (Tompkins Dep. Tr.) at 19:15-16, 40:22-41:6, 89:17-90:20.

**RESPONSE:** Admitted that SAFE was the last TPA to handle the administration of claims, but deny that SAFE, as opposed to Special Trades and/or ACE, was to pay the benefits and losses. See Doc. 27-12, Suzanne Tompkins Dep. Tr. pg. 52, 66.

23.     On October 31, 2009, Wager Contracting was a participant in Special Trades. Ex. E (AGLIC Response to Notice to Admit) Response No. 22; Ex. E to Ex. D (Participation Agreement); Ex. T (Tompkins Dep., Ex. 15) at ACE0005413-14; Ex. S (Tompkins Dep. Tr.) at 122:21-123:10.

**RESPONSE:**    Admitted.

24.     ACE issued a Specific Excess Workers' Compensation and Employers' Liability Insurance Policy No. WCU C45695244 (the "ACE Excess WC/EL Policy") to Special Trades. Ex. E (AGLIC Response to Notice to Admit) Response No. 25; Ex. G to Ex. D (ACE Policy).

**RESPONSE:**    Admitted.

25.     The ACE Excess WC/EL Policy was approved by the New York Insurance Department on March 26, 2007, and the specific excess policy form that ACE issued to Special Trades was approved by the New York Insurance Department on December 12, 2007. Ex. P (Molinaro Dep. Tr.) at 156:20-158:20, 159:15-161:8; Ex. R (Molinaro Dep., Ex. 12) (Insurance Department Filing); Ex. R (Molinaro Dep., Ex. 13) (Insurance Department Filing); Ex. X (ACE Response to AGLIC's Interrogatory) No. 8.

**RESPONSE:**    Admitted.

26.     ACE provided to the New York Office of Self Insurance the required Certificate of Excess Insurance Contract For Group Self-Insurer in connection with the issuance of the ACE Excess WC/EL Policy to Special Trades. Affidavit of Eric Ellis Dean, sworn to May 18, 2017, Ex. A; Ex. X (ACE Response to AGLIC's Interrogatory) No. 8.

**RESPONSE:**    Admitted.

27.     The ACE Excess WC/EL Policy was excess over a combined $1,000,000 WC/EL self insured retention. Ex. E (AGLIC Response to Notice to Admit) Response No. 27; Ex. G to

Ex. D (ACE Policy) at pp. 2 and 4 of 27 of 12/14/16 ECF filing; Ex. W (Dean Dep. Tr.) at 31:12-18.

**RESPONSE:**  Admitted.

28. The ACE Excess WC/EL Policy insured Wager Contracting, subject to the terms and conditions of the ACE Excess WC/EL Policy. Ex. E (AGLIC Response to Notice to Admit) Response Nos. 26 and 28; Ex. B (Compl.), ¶ 13; Ex. C (Answer), ¶ 13; Ex. G to Ex. D (ACE Policy).

**RESPONSE:**  Admitted.

29. During the pendency of the underlying civil action, the ACE Excess WC/EL Policy provided excess reimbursement coverage to Wager Contracting, subject to the terms and conditions of the ACE Excess WC/EL Policy. Ex. G to Ex. D (ACE Policy, Specific Excess Workers' Compensation and Employers Liability Policy at page 3-4 of 11) at pp. 6-7 of 27 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted.

30. The ACE Excess WC/EL Policy specifies that it is intended to be "EXCESS INSURANCE" over and above Special Trades' self-insured retention. Ex. G to Ex. D (ACE Policy, Specific Excess Workers' Compensation and Employers' Liability Policy at page 2 of 11) at p. 5 of 27 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted.

31. The ACE Excess WC/EL Policy states that Special Trades' "acceptance of this policy indicates that you are now and will remain until the end of the policy period a duly qualified self-insurer." Ex. G to Ex. D (ACE Policy, Specific Excess Workers' Compensation and Employers' Liability Policy at page 1 of 11) at p. 4 of 27 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted.

32.  The ACE Excess WC/EL Policy contains a New York Endorsement which provides unlimited EL coverage for "Ultimate Net Loss" in excess of the $1,000,000 combined WC/EL retention and excludes coverage for liability assumed under contract. Ex. B (Compl.), ¶ 28; Ex. C (Answer), ¶ 28; Ex. G to Ex. D (ACE Policy, Specific Excess Workers' Compensation and Employers' Liability Policy at page 4 of 11, Part Two – Employers Liability, E. Exclusions 1) at p. 7 of 27 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted that the ACE Policy includes an endorsement providing unlimited coverage, but deny that the endorsement also excludes coverage for liability assumed under a contract. See Doc. 17-1, Endorsement #10.

33.  The ACE Excess WC/EL Policy is not listed on the AGLIC Excess Policy's Schedule of Underlying Insurance. Ex. E (AGLIC Response to Notice to Admit) Response No. 11; Ex. B to Ex. D (AGLIC Schedule of Underlying Insurance) at p. 18 of 57 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted.

34.  The ACE Excess WC/EL Policy states, as part of its EL coverage, that ACE has "the right and shall be given the opportunity by you to associate with you in the defense, investigation or settlement of any claim, suit or proceeding which appears reasonably likely to involve us. In such an association, you shall promptly cooperate with us in all aspects of defense, investigation or settlement." Ex. G to Ex. D (ACE Policy, Specific Excess Workers' Compensation and Employers' Liability Policy at page 5 of 11, Part Two – Employers Liability, F. Defense) at p. 8 of 27 of 12/14/16 ECF filing.

**RESPONSE:**  Admitted.

*The NYSIR Policy*

35. Pelham also carried insurance issued by New York Schools Insurance Reciprocal ("NYSIR") with limits of $1 million primary and $15 million excess. Ex. C to Ex. D (February 9, 2016 Adam Smith Letter to Pelham) at 5; Exs. F, G (NYSIR Policies).

**RESPONSE:** Admitted.

36. NYSIR did not provide coverage to Wager Contracting. Exs. F, G (NYSIR Policies); Ex. C to Ex. D (Adam Smith Feb. 9, 2016 letter to Wager).

**RESPONSE:** Admitted.

### The Civil Action

37. On October 31, 2009, Richard Wager ("Mr. Wager") was injured while he was performing demolition work on the School building owned by Pelham as an employee of Wager Contracting. Ex. E (AGLIC Response to Notice to Admit) Response Nos. 1-2, 35 and 44; Ex. J to Ex. D (IFA) at 1; Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action) at 3.

**RESPONSE:** Admitted.

38. Mr. Wager and his wife (together, the "Wagers") instituted a personal injury action, *Richard Wager and Sana Wager v. Pelham Union Free School District, et al.*, Supreme Court, State of New York, County of Westchester, Index No. 68572/2012 (the "Civil Action") against Pelham, Gisolfi and certain other design professionals. Ex. E (AGLIC Response to Notice to Admit) Response No. 33; Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action) at 3-4.

**RESPONSE:** Admitted.

39. In the Civil Action, on or about April 28, 2011, Pelham asserted claims against Wager Contracting for common law and contractual indemnification ("Third Party Claims"). Ex. E (AGLIC Response to Notice to Admit) Response No. 34; Ex. B (Compl.), ¶ 15; Ex. C

(Answer), ¶ 15; Ex. J. to Ex. D (IFA) at 1; Ex. I (Pelham Third Party Complaint Against Wager Contracting), ¶¶ 15-23.

**RESPONSE:** Admitted.

40. During the Civil Action, the NGM Primary Policy provided a defense and coverage up to its remaining limit of liability of $529,166.52 to Pelham, Wager Contracting and Gisolfi. The NGM Primary Policy had separately responded to and paid other claims arising out of the same incident resulting in a partial exhaustion of the NGM Primary Policy limit of liability. Ex. E (AGLIC Response to Notice to Admit) Response Nos. 37 and 38; Ex. L (Gross Dep. Tr.) at 151:3-20, Ex. M (Gross Dep. Ex. 10); Ex. S (Tompkins Dep. Tr.) at 139:3-10; Ex. U (Tompkins Dep. Ex. 31), ¶ 2b(a).

**RESPONSE:** Admitted that NGM provided a defense to Pelham. Excepted as expressly admitted, Paragraph 40 is denied. See Doc 27-10, Eileen Gross Dep. Tr., pg. 74, Doc 27-18, Doc. 27-22 at ACE0001660.

41. As a result of the injuries suffered by Mr. Wager as well as a co-employee, the payments to and on behalf of Mr. Wager, Special Trades satisfied its combined $1,000,000 self-insured retention provided for in the ACE Excess WC/EL Policy. Ex. B (Compl.), ¶ 29; Ex. C (Answer), ¶ 29; Ex. L (Gross Dep. Tr.) at 53:16-54:15.

**RESPONSE:** Admitted.

42. Prior to November of 2014, the third party administrator and authorized representative for Special Trades assigned Ricardo Baez, Esquire to represent the interests of Wager Contracting in the Civil Action. Ex. L (Gross Dep. Tr.) at 52:2-14, 74:8-12.

**RESPONSE:** Admitted.

43.     Mr. Baez at all times relevant to this case represented the Special Trades for Mr. Wager's workers' compensation claim. Ex. S (Tompkins Dep. Tr.) at 48:10-25, 61:22-62:4, 145:20-146:21.

**RESPONSE:**    Denied. <u>See</u> Doc 27-12, Suzanne Tompkins Dep Tr. at pg. 48.

44.     As a result of Mr. Wager's injuries, Special Trades was obligated to and did pay workers compensation benefits to and on behalf of Mr. Wager. Ex. N (O'Reilly Dep. Tr.) at 40:6-8, 41:22-42:1, 79:22-80:20; Ex. O (O'Reilly Dep. Ex. 4).

**RESPONSE:**    Admitted.

45.     As of the summer of 2011, Special Trades reported to ACE that its required payment of indemnity and medical benefits to and on behalf of Mr. Wager and the other co-employee injured in the incident exceeded the $1,000,000 retention under the ACE Excess WC/EL Policy. Ex. N (O'Reilly Dep. Tr.) at 79:24-80:20; Ex. O (O'Reilly Dep. Ex. 4).

**RESPONSE:**    Admitted.

46.     In November of 2014, the law firm of Fabiani Cohen & Hall LLP was recommended as defense counsel by ACE pursuant to Part Two, F., of the ACE Excess WC/EL Policy, and with the consent of the third party administrator and authorized representative for Special Trades defended Wager Contracting against the Third Party Claims. Ex. E (AGLIC Response to Notice to Admit) Response No. 40; Ex. L (Gross Dep. Tr.) at 35:5-14, 66:4-21, 74:8-12.

**RESPONSE:**    Admitted.

47.     Prior to March 2015, NGM, Wager Contracting's primary general liability carrier, had disclaimed coverage. Ex. V (Cohen Dep. Tr.) at 112:18-114:1.

**RESPONSE:**    Admitted.

48.     Accordingly, AGLIC did not acknowledge coverage for Wager Contracting until after NGM withdrew its disclaimer of coverage. Ex. K (Adam Smith February 9, 2016 letter to Wager).

**RESPONSE:**   Admitted.

49.     AGLIC's coverage position is set forth in a February 9, 2016 letter from the Coughlin Duffy law firm to Wager. Ex. K (Adam Smith February 9, 2016 letter to Wager).

**RESPONSE:**   Admitted that American Guarantee set forth its coverage position to Wager Contracting in a February 9, 2016 letter.

50.     Wager Contracting filed summary judgment motions in the Civil Action that sought, in relevant part, to dismiss claims by Pelham, Savin Engineers (the construction manager for the work at the School), and Robert Firneis (an architect employed by Savin Engineers) against Wager Contracting to the extent of its insurance coverage being afforded to those other parties. Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action).

**RESPONSE:**   Denied. See ACE Ex. I to Ex. D.

51.     In the Civil Action, the trial court entered a Decision and Order dated January 11, 2016 which, in pertinent part, granted the Wagers' motion for partial summary judgment against Pelham on their Labor Law § 240 cause of action. The Decision and Order held that Pelham violated its nondelegable duty under Labor Law § 240 as a matter of law. Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action) at 18 and 26.

**RESPONSE:**   Admitted.

52.     With respect to Wager Contracting's summary judgment motion against Pelham, the trial court's January 11, 2016 Decision and Order held:

> Wager Contracting is entitled to summary judgment dismissing so
> much of the District's [Pelham] third-party cause of action as seeks

>indemnification for sums up to the limits of the policy insuring both Wager Contracting and the District [Pelham]. Moreover, while the District's [Pelham's] claims for indemnification beyond the limits of Wager Contracting's policy are not barred, an award of summary judgment on the District's third-party claims for indemnification would be premature at this time.

Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action) at 26 (citation omitted).

**RESPONSE:**   Admitted.

53.   With respect to Wager Contracting's summary judgment motion against Savin Engineers and Mr. Firneis, the Decision and Order stated in part: "Since Savin Engineers and Firneis have not established that they have incurred damages in excess of the policy limits, the antisubrogation rule requires that their motion for summary judgment on their cross-claims against Wager Contracting for common-law and contractual indemnification be denied." Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action) at 26 (citations omitted).

**RESPONSE:**   Admitted.

54.   The Decision and Order left for trial a number of issues, including the amount of damages to be awarded Mr. Wager and his wife. Ex. I to Ex. D (Jan. 2016 Decision and Order in Underlying Action).

**RESPONSE:**  Admitted that the Decision and Order did not include the amount that would be awarded to Mr. Wager and his wife. Except as otherwise admitted; Paragraph 54 is denied.

**The Settlement and the Interim Funding Agreement**

55.   On June 16, 2016, the parties to the Civil Action entered into an agreement to dismiss all claims, counterclaims and cross-claims in exchange for the payment to Richard and Sana Wager of $24 million ("Settlement"). Ex. B (Compl.), ¶ 30; Ex. C (Answer), ¶ 30; Ex. U (Settlement Agreement) (Tompkins Dep. Ex. 31).

**RESPONSE:**   Admitted.

56. As part of the funding of the Settlement of the Civil Action, the remaining limits of the NGM Primary Policy was exhausted. Ex. E (AGLIC Response to Notice to Admit) Response No. 39; Ex. B (Compl.), ¶ 18; Ex. C (Answer), ¶ 18.

**RESPONSE:** Admitted.

57. At the time of the Settlement, ACE contended that AGLIC must tender and contribute toward the Settlement the full AGLIC Excess Policy limit of $5,000,000. Ex. J to Ex. D (IFA) at 2 (ACE00008455).

**RESPONSE:** Admitted.

58. Conversely, AGLIC contended that no amount of the AGLIC Excess Policy limit of $5,000,000 should be tendered and contributed toward the Settlement. Ex. J to Ex. D (IFA) at 2 (ACE00008455).

**RESPONSE**: Admitted.

59. For the purpose of achieving the Settlement of the Civil Action, on June 24, 2016, ACE and AGLIC entered into an Interim Funding Agreement ("IFA") pursuant to which AGLIC contributed $1.5 million and ACE funded the $3.5 million balance of the AGLIC Excess Policy limit with each insurer reserving rights to contest the amount each paid in accordance with the terms of the Interim Funding Agreement. Ex. B (Compl.), ¶ 2; Ex. C (Answer), ¶ 2; Ex. J to Ex. D (IFA) at 2 (ACE0008455).

**RESPONSE:** Admitted

60. ACE and AGLIC agreed in the IFA that the "Settlement is reasonable as to Pelham and Wager Contracting and, to the extent required," ACE and AGLIC "provided consents and authorizations to conclude the . . . Settlement." Ex. J to Ex. D (IFA) at 1-2 (ACE0008455-56).

**RESPONSE:**  Admitted.

    61.    ACE and AGLIC agreed in the IFA that:

> [E]xcept for those issues reserved in Section V [of the Interim Funding Agreement], all conditions precedent to coverage, to the extent any have been asserted and/or exist, under the AGLIC Excess Policy and/or the ACE Excess WC/EL Policy, have been satisfied. Each of ACE and AGLIC further warrant, represent and agree that no such condition precedent to coverage, to the extent any exist, will be raised.

Ex. B (Compl.), ¶ 34; Ex. C (Answer), ¶ 34; Ex. J to Ex. D (IFA) at 2 (ACE0008455).

**RESPONSE:**  Admitted.

    62.    ACE and AGLIC further agreed in the IFA that:

> ACE and AGLIC reserve their respective rights and defenses only as to the following issues in order to have the Funding Dispute and the amount of the Interim Funding Payment judicially determined:
>
> 1.    Whether the anti-subrogation doctrine precludes the indemnification claims against Wager Contracting in excess of the exhausted NGM Policy limits. Nothing set forth in the statement of this issue is intended to limit argument related to the effect, if any, of the court's January 11, 2016 Order.
>
> 2.    Whether Wager Contracting's contractual and common law indemnification obligations should be apportioned between Wager Contracting's AGLIC Excess Policy and the ACE Excess WC/EL Policy.

Ex. B (Compl.), ¶ 35; Ex. C (Answer), ¶ 35; Ex. J to Ex. D (IFA) at 4 (ACE0008457).

**RESPONSE:**  Admitted.

    63.    Each of AGLIC and ACE were represented by counsel in the negotiation and drafting of the IFA. Ex. J to Ex. D (IFA) at 6 (ACE0008459).

**RESPONSE:**  Admitted.

64.     Pursuant to Section I. of the IFA, AGLIC represented and warranted that it consented to this Settlement. Ex. J to Ex. D (IFA) at 2 (ACE0008455).

**RESPONSE:**     Admitted.

65.     Pursuant to Section III. A. of the IFA, AGLIC consented to ACE instructing defense counsel for Wager Contracting to conclude the Settlement. Ex. J to Ex. D (IFA) at 2 (ACE0008455).

**RESPONSE:**     Admitted.

66.     Each of AGLIC and ACE made the payments required pursuant to the IFA, with ACE making an additional payment of $17,970,833.48 towards Pelham's common law indemnification cross-claim against Wager Contracting in order to complete the funding of the $24,000,000 Settlement. Ex. U (Settlement Agreement) (Tompkins Dep. Ex. 31), ¶ 2b(a).

**RESPONSE:** Admitted that AGLIC contributed $1.5 million to the settlement and that ACE contributed $21,470,833.48. Except as expressly admitted, Paragraph 66 is denied.

Dated:  New York, New York
        June 8, 2017

                                        Respectfully submitted,

                            By:     *s/ Adam M. Smith*
                                    Adam M. Smith, Esq.
                                    Gabriel E. Darwick, Esq.
                                    COUGHLIN DUFFY LLP
                                    88 Pine Street, 28th Floor
                                    New York, New York 10005
                                    Tel.: 212-483-0105

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **Response to Rule 56.1 Statement** was served this 8th day of June, 2017, via this Court's electronic filing system on all counsel of record.

Dated: New York, New York
       June 8, 2017

>                          *s/ Gabriel E. Darwick*
>                          Gabriel E. Darwick
>                          COUGHLIN DUFFY LLP
>                          88 Pine Street, 28th Floor
>                          New York, New York 10005
>                          Tel: 212-483-0105
>                          *Attorneys for Defendant,*
>                          *American Guarantee & Liability Insurance Company*